IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUBLEVISION ENTERTAINMENT, LLC,
a Tennessee limited liability company, as
assignee of Commercial Escrow Services,
Inc., a California corporation, and Antoinette
Hardstone, an individual,

    Plaintiff,

  v.

NAVIGATORS SPECIALTY INSURANCE
COMPANY, a New York Corporation,

    Defendant.
                             /

No. C 14-02848 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

In this breach-of-insurance contract action, defendant insurer moves for a protective order to completely bar discovery of conduct, communications, and written materials related to a mediation in prior state court litigation. For the following reasons, the motion for a protective order is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff Doublevision Entertainment, LLC, produces films and employed assignors Commercial Escrow Services, Inc. ("CES") and its escrow officer, Antoinette Hardstone, as its escrow agents for a film-financing deal. Doublevision placed collateral in escrow. CES and Ms. Hardstone disbursed Doublevision's collateral to third parties not included in the escrow instructions. As a result, Doublevision lost its collateral as well as the forthcoming financing and standby letter of credit (Dkt. No. 35 at 177–83; Metzger Decl. ¶ 5).

In October 2010, Doublevision filed a complaint in California state court alleging several causes of action, including conversion, fraud, and breach of contract, by CES and Ms.

1  Hardstone. Navigators Specialty Insurance Company, CES's insurer, provided CES and
2  Ms. Hardstone with a defense in that underlying action. On December 5, 2011, Retired Judge
3  Alfred Chiantelli, of ADR Services Inc., conducted a private mediation. The following attended
4  the mediation in-person: Ms. Hardstone, principal of CES, on behalf of herself and CES along
5  with her attorneys Glen Olson and Ari Baruth of Long & Levit; William Kunkel, principal of
6  Doublevision, along with his attorney Ryan Lapine of Rosenfeld, Meyer & Susman; Eric Moon,
7  an attorney at Clyde & Co. US LLP, on behalf of Navigators. Sam Marcus, a Navigators
8  employee, attended the mediation via telephone (Dkt. No. 34-1 at 18; Dkt. No. 35 at 46–60,
9  106–25; Hardstone Decl. ¶ 1; Lapine Decl. ¶ 6; Moon Decl. ¶¶ 2–3).

Ultimately, the state causes of action went to trial. The court entered a final judgment of $1,500,000 and pre-judgment interest against CES and Ms. Hardstone. Although Doublevision prevailed at trial, the judgment remains unsatisfied, which brings us to the litigation at hand (Dkt. No. 35 at 72–96).

In May 2014, Doublevision, as assignee of claims by CES and Ms. Hardstone, sued Navigators in state court. Navigators removed here. The parties now request the assistance of the Court in resolving a dispute over discovery requests calling for information and statements relating to the December 5 mediation. This order follows full briefing and oral argument (Dkt. No. 1; Dkt. No. 1-1 at 23; Dkt. Nos. 35–36).

**ANALYSIS**

Through its motion, Navigators seeks to "maintain the confidentiality of all conduct, communications and written materials related in any way [to] the mediation conducted on December 5, 2011" (Br. 6). Navigators wants to bar discovery of conduct, communications, and written materials in any way related to the mediation and exclude it all from evidence. This order holds that California's mediation privilege protects oral and written statements and communications made from December 5 to 15 in 2011 as well as statements and communications specifically prepared for the purpose of or pursuant to a mediation — but not otherwise.

2

**1. PROTECTIVE ORDER.**

To obtain a protective order pursuant to FRCP 26(c), the moving party must establish good cause. Privilege may establish good cause. State privilege law governs when a federal court exercises diversity jurisdiction over the parties' claims for relief. *Pearson v. Miller*, 211 F.3d 57, 72 (3rd Cir. 2000); FRE 501.

To the extent stated below, Navigators has established good cause for a protective order because such an order is necessary to protect communications and writings subject to California's mediation privilege.

**A. Mediation Statements and Communications.**

Under Section 1119 of the California Evidence Code:

> No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or mediation consultation shall remain confidential.

The privilege does not protect non-communicative mediation conduct, underlying facts, or otherwise admissible evidence simply because a party raised or introduced the facts or evidence at a mediation. More, "the factual contents of a conversation or writing are not automatically deemed confidential simply because they are included in a mediation communication." *Lappe v. Super. Ct.*, No. B255704, 2014 WL 7239872, at *5 (Cal. Ct. App. Dec. 19, 2014).

A mediation ends — by operation of law — when the parties execute a settlement agreement in writing or place it on the record orally, when the mediator or a participant

circulates a signed statement stating the mediation is terminated, *or when the parties do not communicate with the mediator about the dispute for ten calendar days*. Cal. Evid. Code 1125.

California's mediation privilege goes beyond communications among named parties. The privilege applies to communications among "participants." Cal. Evid. Code 1119. Participants include the parties, the mediator, and any other non-parties that attend the mediation. For example, a participant might be a "disputant not involved in the litigation, a spouse, an accountant, *an insurance representative*, or an employee of a corporate affiliate." Cal. Evid. Code 1122, Cal. Law Rev. Comm'n Cmt. (West 2014) (emphasis added). A participant may include an observer who did not actively engage in the mediation process, but who was present and nonetheless obligated to uphold the confidentiality of the mediation. *Cassel v. Super. Ct.*, 244 P.3d 1080, 1092–93 (Cal. 2011).

Similarly, as the privilege protects all participants, not just the parties, all participants must expressly agree to completely waive the mediation privilege under Section 1122(a)(1).

In accordance with the plain language of Section 1119, this order now protects oral and written statements and communications — evidence of anything said — made during the mediation. Navigators, however, argues that the mediation privilege protects conduct, communications, and written materials related in any way to the mediation. This overreaches. Conduct is not protected by the mediation privilege, nor does Section 1119 use the language "related in any way" to a mediation. The mediation privilege is reserved for statements and communications made during the mediation, and, as discussed in more detail below, for a limited range of communications created immediately before and after the mediation.

Protected statements and communications made *during* the mediation include those made between December 5 and December 15, 2011. Statements and communications made after December 15 are not protected as statements made during the mediation because on December 15 the mediation ended by operation of law. The mediation terminated on December 15 because — as conceded by both parties at oral argument — December 15, 2011, marked the tenth calendar day with no communication between the parties and the mediator (*see also*, Lapine Decl. ¶ 7).

4

Navigators' assertion that the parties reserved an additional three hours of mediation time with Mediator Chiantelli for future use goes nowhere. The statutory conditions for termination of the mediation occurred when no communications between the parties and the mediator arose for ten calendar days. In our case, to be considered a statement made during the mediation, the statement must have been made between December 5 and December 15, 2011.

This order, therefore, protects statements and communications made during the mediation by all participants, including Navigators. Participants include non-parties that attended the mediation, such as Navigators, regardless of the degree of their involvement in the mediation discussions. Doublevision's argument that Eric Moon and Sam Marcus did not participate in the mediation because of their relative silence or inactivity does not change the fact that they participated within the meaning of Section 1119.

Finally, because Navigators' representatives, Moon and Marcus, participated within the meaning of Sections 1119 and 1122, their signatures are required to completely waive the mediation privilege. All participants — including the mediator and non-parties — must sign a waiver in order to make any privileged communications discoverable or admissible under Section 1122(a)(1). The waiver relied on by Doublevision falls short. Despite Mediator Chiantelli's assent, via the letter from ADR Services Inc., Navigators' participants did not sign the waiver. Without the signature of all participants, the waiver does not vitiate the privilege as to communications to which Navigators was privy during the mediation (Dkt. No. 34-1 at 12–16, 18).

In an effort to illustrate the scope of the mediation privilege in this particular instance, this order holds that Navigators is obligated to respond to interrogatories five and six as well as request for production number four. These three discovery requests call for underlying facts, reasons for conduct, and evidence of such underlying conduct and reasoning. Neither the interrogatories nor the request for production call for evidence of or actual statements and communications made during the mediation (*see* Dkt. No. 34-1 at 23).

To further illustrate, this order holds that request for admission number one is limited to pre-mediation or non-communicative mediation conduct. This request for admission asks

1  Navigators to "[a]dmit that you refused to authorize the use of $200,000 from the policy at issue
2  to effect a settlement offer at the mediation proposed to and accepted by all parties to the
3  underlying case." A limitation is appropriate here because the discovery request could be
4  interpreted as calling for either privileged statements and settlement discussions conducted
5  during the mediation or pre-mediation decisions and unprotected mediation conduct
6  (Dkt. No. 34-1 at 23).

### B. Mediation Preparation and Debriefing.

In addition to protecting statements and communications made during a mediation, Section 1119 protects some communications prepared both before and after the mediation. Communications and writings prepared for the purpose of a mediation include those "between a mediation disputant and his or her own counsel, even if these do not occur in the presence of the mediator or other disputants." *Cassel*, 244 P.3d at 1085, 1090–92 (holding trial court properly excluded emails between counsel and disputant exchanged months before and in preparation for mediation). Under such circumstances — where a communication or writing was prepared by or on behalf of only some of the mediation participants — only the participants who prepared or on whose behalf the communication or writing was prepared need to agree to disclosure. This type of limited waiver — made pursuant to Section 1122(a)(2) — only waives the privilege insofar as the relevant materials do not reveal anything said or done at the mediation.[*]

"In California, it is settled that absent a conflict of interest, an attorney retained by an insurance company to defend its insured under the insurer's contractual obligation to do so represents and owes a fiduciary duty to both the insurer and insured." In this tripartite relationship — absent a conflict of interest requiring retention of *Cumis* counsel — the attorney acts on behalf of both the insured and the insurer. *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1406 (Cal. Ct. App. 2002); *see also Park Townsend, LLC v. Clarendon Am. Ins.*

---

[*] Section 1122(a)(2) states that privileged materials remain admissible and discoverable if "the communication, document, or writing was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally in accordance with Section 1118, to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation."

6

1  *Co.*, 12-CV-04412-LHK, 2013 WL 3475716, *7–8 (N.D. Cal. July 20, 2013) (Judge Lucy H.
2  Koh).
3       Based on Section 1119, this order protects mediation communications prepared for the
4  purpose of or pursuant to a mediation except for those subject to a valid limited waiver under
5  Section 1122(a)(2). This order now applies the foregoing to the documents at issue.

### *(1)  Pre-Mediation Emails.*

7       The parties dispute whether the mediation privilege applies to pre-mediation emails sent
8  from November 28 to December 1, 2011. The following individuals circulated and received
9  these emails: Glen Olson, Ari Baruth, and Shane Cahill, attorneys at Long & Levit, the firm
10 Navigators hired to represent CES and Ms. Hardstone in the underlying litigation; Sam Marcus,
11 a Navigators employee; Toni Hardstone of CES; Ryan Lapine and another unnamed attorney of
12 Rosenfeld, Meyer & Susman, the firm representing Doublevision. Of the seven emails, Olson
13 sent five and Marcus sent two. The mediation privilege only protects two of these emails
14 because the rest were not prepared for the purpose of the mediation (*see* Dkt. No. 35 at 136,
15 170–71).
16      Specifically, the two Olson emails, sent on November 28, are not privileged because they
17 did not discuss the mediation. The Olson email sent on November 29 is not privileged because it
18 did not discuss mediation strategy and was not prepared for the upcoming mediation. The email
19 contained the word mediation, but a mere reference to a mediation in the near future does not
20 bring this email within the scope of the privilege.
21      Parts of the Olson emails sent on November 30 and December 1, however, fall within the
22 scope of the mediation privilege. The first two paragraphs of the November 30 email and the
23 last paragraph of the December 1 email are not privileged because they did not discuss the
24 mediation, they discussed liability in general. The final paragraph of the November 30 email,
25 starting with "[t]hat being said . . . ," is a writing prepared for the purpose of a mediation because
26 it discussed mediation strategy and Olson sent the email shortly before the mediation. This is
27 also true for the first two paragraphs of Olson's December 1 email.

Doublevision's waiver falls short here as well. As discussed above, not all participants signed Doublevision's waiver. Accordingly, Doublevision did not effect a complete privilege waiver under Section 1122(a)(1). Doublevision did effect a limited waiver because Section 1122(a)(2) authorizes disclosure of a document prepared by or on behalf of only some of the participants if that subset of participants consents (Dkt. No. 34-1 at 12–16).

These paragraphs remain privileged despite Doublevision's limited waiver because Navigators is part of the subset of participants on whose behalf Olson prepared these emails. Olson prepared these emails on behalf of Navigators, as well as on behalf of CES and Ms. Hardstone, because Olson owed Navigators a fiduciary duty as the insurer. As Navigators' mediation participant, Marcus would need to sign a waiver in order to relinquish the privilege as to these particular paragraphs, even under Section 1122(a)(2).

While Doublevision argues that to be "prepared for" the purpose of a mediation, the document must be submitted to the mediator. This is incorrect. Section 1119 protects documents made "for the purpose of, in the course of, or pursuant to a mediation," even those made outside the presence of the mediator.

Finally, the Marcus email (to Glen Olson on November 30) is not privileged because it did not discuss the mediation. Navigators is correct that Marcus sent this email shortly before the mediation, but unlike the final paragraph of the Olson email, this email did not discuss mediation strategy, plans for the mediation, or any mediation preparations. It discussed liability in general. His other email (sent December 1) is not privileged because it simply stated who would attend.

To conclude, this order protects the final paragraph of the Olson email, sent November 30, and the first two paragraphs of Olson's December 1 email, not the other five emails.

### *(2)  Post-Mediation Emails and Memoranda.*

The parties also dispute whether the mediation privilege protects emails and memoranda prepared by Long & Levit, including Attorney Olson, as late as Spring 2012. The privilege protects only one excerpt within these materials.

8

The privilege clearly protects pages one through four, starting with "[a]s to the mediation . . . " through, and limited to, the section entitled "The December 5, 2011 Mediation," of the Olson memorandum dated December 7. The privilege protects this excerpt because it recounted nearly everything said at the mediation. The privilege does not cover the remaining pages because they discussed general litigation strategy unrelated to the mediation (Dkt. No. 35 at 138–43).

Olson sent the memorandum on December 7, before the end of the mediation period, but the relevant excerpt would be privileged even if prepared after December 15 because it recounted statements made during the mediation. While Doublevision is correct that the mediation terminated as a matter of law on December 15, the end of the mediation did not strip the privilege that attached to statements and communications made during the mediation. *See, e.g.*, *Wimsatt v. Super. Ct.*, 152 Cal. App. 4th 137, 161 (2007).

The mediation privilege protects neither the emails nor the memoranda — produced by Doublevision for the first time at oral argument — from Spring 2012. These materials are not privileged because they (I) discussed general litigation strategy, not the mediation, (ii) were not prepared during or pursuant to a mediation, and (iii) were not prepared for the purpose of either the December 5 or a future mediation. These materials, prepared in 2012, were not made during a mediation because the *only* mediation took place in 2011. These communications could not be prepared for the purpose of or pursuant to a mediation because they do not recount anything from the December 5 mediation and no subsequent mediation (with a mediator) ever occurred.

Accordingly, while part of the December 7 memorandum is privileged, the 2012 communications remain discoverable and admissible.

### 2. EVIDENTIARY OBJECTIONS.

Navigators objects to parts of Doublevision's supporting declarations and exhibits (Dkt. No. 36 at 7–8).

#### A. Lapine Declaration.

Navigators first objects to paragraphs 7–9 of the declaration of Ryan Lapine and Doublevision's exhibits 7, 8, and 13 based on mediation privilege, hearsay, and relevance. It is

9

unnecessary to rule on Navigators' objection to paragraphs eight and nine of the Lapine declaration as this order does not rely on the portions to which Navigators objects. Navigators' hearsay, relevance, and privilege objections to the exhibits and paragraph seven are overruled.

### B. Kunkel and Hardstone Declarations.

Navigators also objects to parts of the declarations of William Kunkel and Antoinette Hardstone based on mediation privilege, hearsay, and relevance. It is unnecessary to rule on Navigators' objections as this order does not rely on those portions of the declarations.

### C. Metzger Declaration.

Finally, Navigators objects to portions of the declaration of Doug Metzger. Navigators' objection based on relevance, or FRE 401–402, not 802, is overruled.

### 3. CONTINUING DISCOVERY OBLIGATIONS.

In light of this order's resolution of the parties' discovery dispute — and in an effort to facilitate timely and orderly discovery — this order holds as follows.

*First*, Navigators shall comply with the specific discovery requests discussed herein and with any other outstanding discovery requests that do not call for statements and communications made during the mediation. As set forth in this order, mediation statements and communications remain privileged, but underlying facts and discussions of liability in general do not.

*Second*, the parties shall reschedule depositions cut short by Navigators' improper assertion of the mediation privilege. This includes the Olson deposition. During that deposition, David Gabianelli improperly objected to questions about a non-privileged communication from 2012 and settlement discussions outside of the mediation. Gabianelli improperly asserted that the privilege covered anything "related" to the mediation. More, when he said "I don't know of any discussions that were had outside of the continuing efforts that [were] within the course of mediation, which includes paragraph 10 in this letter. I know of no other settlement efforts," he improperly asserted that the privilege protected communications clearly not connected to the mediation and made more than a year after the parties' only mediation (Olson Dep. 118–121).

*Third*, where a responsive document contains statements or communications made at the mediation — statements and communications actually subject to the mediation privilege — the documents shall be turned over with the privileged statements redacted. The presence of some privileged excerpts shall not be grounds for refusal to turn over the entire document.

The parties are reminded of their obligation to abide by this and all previous orders as well as the Civil Local Rules.

### 4. DEADLINE FOR WAIVER OF MEDIATION PRIVILEGE.

In the interest of good case management, the Court makes the following ruling. In light of the fact that at least some of the contested materials will now be admissible at trial, there is a possibility that Navigators will think better of its desire to maintain secrecy over the mediation, and will seek to waive the privilege so that it may use the materials at trial by way of rebuttal. If Navigators seeks to do so, it must do so by **TUESDAY, FEBRUARY 24, 2015**, before the close of non-expert discovery. Any election must be a complete waiver — as to the entire universe of materials — not a selective or partial waiver. If Navigators chooses not to completely waive the mediation privilege, it will not be allowed to use protected materials for summary judgment or at trial. The purpose of this paragraph is to avoid sandbagging, that is, to provide Doublevision with an opportunity to do follow-up discovery, which opportunity would be denied if Navigators were allowed to make a last-minute decision to waive the mediation privilege.

## CONCLUSION

For the reasons provided herein, Navigators' motion for a protective order is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: January 28, 2015

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE