**Pages 1 - 7**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

DOUBLEVISION ENTERTAINMENT,     )
LLC, a Tennessee limited        )
liability company, as assignee  )
of commercial Escrow services,  )
Inc., a California corporation, )
and Antoinette Hardstone, an    )
individual,                     )
                                )
        Plaintiff,               )
                                )
  vs.                           )     **NO. C 14-02848 WHA**
                                )
NAVIGATORS SPECIALTY INSURANCE  )
COMPANY, a New York             )
Corporation,                    )
                                )  San Francisco, California
        Defendant.              )  Monday, March 16, 2015
                                )

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
For Plaintiff Doublevision Entertainment, LLC:
                  Rosenfeld Meyer & Susman LLP
                  232 North Canon Drive
                  Beverly Hills, CA  90210-5302
                  (310) 858-7700
                  (310) 860-2430 (fax)
         **BY:   RYAN LAPINE**

For Defendant Navigators Specialty Insurance Company:
                  Clyde & Co. US LLP
                  101 Second Street, 24th Floor
                  San Francisco, CA  94105
                  (415) 365-9800
                  (415) 365-9801 (fax)
         **BY:   DAVID ANTHONY GABIANELLI**

Reported By:   Lydia Zinn, CSR #9223, Official Reporter

```
 1  Monday - March 16, 2015                                8:24 a.m.
 2                         P R O C E E D I N G S
 3          THE COURT:  This is Case 14-Civil-2848, Doublevision
 4  Entertainment versus Navigators Specialty Insurance.
 5      Please make your appearances.
 6          MR. LAPINE:  Good morning, Your Honor.  Ryan Lapine,
 7  of Rosenfeld Meyer and Susman, for plaintiff Doublevision
 8  Entertainment.
 9          MR. GABIANELLI:  Defendant Navigators Specialty
10  Insurance Company.
11          THE COURT:  Now, it's 8:25 in the morning.  The
12  reason we're here is that at 8:00 o'clock the lawyers were
13  supposed to meet and confer in the jury room, prior to a
14  possible hearing on a discovery dispute.  This is not the first
15  discovery dispute in this case.  There have been several.
16      My law clerk told me a few moments ago that the lawyers
17  were yelling at each other, and reported that they could not be
18  in the same room with each other.
19      I want you to know that I'm not going to try to resolve
20  your dispute today.  I'm going to just talk with you about the
21  yelling at each other.  I want to hear what each of you have to
22  say on that subject.  I'll start with Mr. Lapine.  You have to
23  come to the lectern, please.
24          MR. LAPINE:  Good morning, Your Honor.  One of the
25  issues in our discovery letter actually is that I feel that
```

1   throughout this case -- and I think the record reflects -- that
2   instead of the conduct I would expect in a case, I've been met
3   in depositions with hostility; with -- with threats; with --
4   with indications, after I ask a question, "Move on.  This
5   question's never going to see the light of day.  Move on,
6   Counsel.  Move on."
7       The same thing happened this morning.  I was told --
8       I -- and I understand having disputes about the merits of
9   a position.
10      I don't understand someone telling me that after this, my
11  karma is going to be destroyed.  I don't understand someone
12  telling me that you have absolutely no professionalism; who
13  taught you professionalism, because that's --
14          **THE COURT:**  Wait, wait, wait.  See, you're being
15  vague.  Tell me what was actually --
16      You're saying, "I don't understand someone telling me."
17          **MR. LAPINE:**  Counsel said to me --
18          **THE COURT:**  You're not actually saying that he said
19  that.
20          **MR. LAPINE:**  No.  Counsel said to me, "Your karma's
21  going to be destroyed" this morning.  Counsel said to me, "No
22  one's ever taught you professionalism."  *Ad hominem* attack
23  after *ad hominem* attack.  And in the depositions, the same
24  thing is happening, over and over again.
25      I've been litigating for only 11 years, Your Honor.  I've

```
 1  gone against Marty Singer; I've gone against Patti Glaser;
 2  people with terrible reputations.  I've never had anything like
 3  this happen to me before.
 4           THE COURT:  Well, I know both of those lawyers, and I
 5  do not necessarily subscribe to your characterization of them
 6  as terrible.
 7           MR. LAPINE:  Well, I -- let me restate that.  They're
 8  very aggressive litigators.  Just -- but there's decorum and
 9  professionalism.  I've never had someone make *ad hominem*
10  attacks on me before in litigation.
11           THE COURT:  Let me hear from the other side.
12           MR. GABIANELLI:  Your Honor, David Gabianelli, for
13  the defendant Navigators Specialty Insurance Company.  And I
14  categorically deny what Counsel's stating.  Throughout this
15  case I've stated my discovery objections.
16      Have I asked him to move on at deposition?  Yes.
17      And why have I done that?  Because repeated questions.
18  The same question, after the same question, after the same
19  question, where we've got an answer already on the record.
20      And this morning what happened was I told him our
21  position's not going to change.
22      For instance, he wrote another letter -- another
23  discovery-dispute letter -- late on Friday afternoon.
24           THE COURT:  Did the word "karma" come up this
25  morning?
```

1 **MR. GABIANELLI:** The word karma did come up. Yeah.

2 **THE COURT:** All right. How did I come up?

3 **MR. GABIANELLI:** It did come up when I said that he
4 should watch out for his karma, because he's screaming at me in
5 the room.

6 What happened was I told him that we can't respond to the
7 discovery-dispute letter that he wrote on late Friday, because
8 I haven't had a chance to speak with my client about it. He
9 wants to put all of that on the record today. My
10 understanding: That wasn't a part of what we're here to do.

11 He wrote certain matters in a letter. We had a chance to
12 respond to those on Friday.

13 He then wrote another letter on Friday. I told him my
14 client's been out of town. I can't respond on that issue. And
15 we had already agreed --

16 **THE COURT:** Did I set the second letter for hearing?

17 **MR. GABIANELLI:** No, you have not, Your Honor.

18 **THE COURT:** Then we're limited to the first one.

19 **MR. GABIANELLI:** Okay.

20 **THE COURT:** Where did you get the idea you can slip
21 in other things.

22 **MR. LAPINE:** I didn't get the idea. I just brought
23 it before the Court, but --

24 **THE COURT:** That will be some other hearing for some
25 other day.

1    Look.  I'm going to do the following.  You all have had
2 too many disputes; way more than the normal lawyers.  I'm going
3 to refer this to a Magistrate Judge to resolve all pending
4 disputes.
5    But in addition I'm going to specifically ask that the
6 Magistrate Judge hold an evidentiary hearing, put you both
7 under oath, and figure out who's lying and who's telling the
8 truth; and make a recommendation to me as to whether or not one
9 or both of you should be referred to the Standing Committee on
10 Professional Conduct.
11    I'm sorry, but this is way beyond the call of what you see
12 in normal litigation.  One of you is not telling the truth.  I
13 don't know who it is, but one of you or both of you may get
14 referred to the Standing Committee, one consequence of which is
15 you will be suspended from practice before the United States
16 District Court if that's what the Committee decides.  I don't
17 know.
18    But you lawyers -- listen.  Good lawyers don't have
19 disputes like this.  Good lawyers don't say they can't even
20 meet in the jury room and discuss things.  One of you is not
21 telling the truth.
22    So you can just go home for now, and stand by until
23 further notice.  This may be a delay in the case, or maybe
24 that's what the defendant wants.  I don't know.  I'm just not
25 going to put up with it anymore.  So it's going to get referred

1  to a Magistrate Judge with very strict instructions.
2       There's nothing more you even need to say.  The hearing is
3  over.  Thank you.
4           **MR. GABIANELLI:**  Thank you, Your Honor.
5           **MR. LAPINE:**  Thank you.
6  (At 8:31 a.m. the proceedings were concluded.)
7  I certify that the foregoing is a correct transcript from the
8  record of proceedings in the above-entitled matter.

10  *Lydia Zinn*
11  _____      March 16, 2015
    Signature of Court Reporter/Transcriber    Date
12  Lydia Zinn