IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUBLEVISION ENTERTAINMENT, LLC, a Tennessee limited liability company, as assignee of Commercial Escrow Services, Inc., a California corporation, and Antoinette Hardstone, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York corporation, THE NAVIGATORS GROUP, INC., a New York corporation, and DOES 1 through 50,<br><br>    Defendants.<br>_____/ | No. C 14-02848 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this breach-of-insurance-policy action, an assignee of the rights against the insurer contends the insurer breached the terms of the policy and the covenant of good faith and fair dealing. Both sides now move for summary judgment on all claims or, in the alternative, partial summary judgment. For the reasons stated below, the insurer's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion is **DENIED**.

**STATEMENT**

In 2010, Doublevision Entertainment, LLC, an independent film production company, entered into a written contract with IFE Exchange Holdings, Inc., an independent film fund, for

financing a slate of independent films. Pursuant to that contract, IFE agreed to deposit $1.5 million (via a standby letter of credit) with Commercial Escrow Services, Inc. ("CES"), an escrow agent. Doublevision agreed to deposit $250,000, also with CES. Once both deposits were made, CES was to exchange those sums between the parties in accordance with instructions to be provided by Doublevision. If IFE failed to timely procure its letter of credit, it agreed to pay Doublevision liquidated damages of $100,000 (Kunkel Decl., Exh. 1).

Doublevision then wired $250,000 to CES and asked Antoinette Hardstone, who owned and operated CES, to assign the escrow account number 39-5231-AH to the transaction, informing her that instructions for the exchange would follow. Hardstone assigned that account to the transaction (Hardstone Decl. Pl.'s Mtn. ¶¶ 2–3, Exhs. I–III).

On April 27, Hardstone received a series of five escrow instructions from a different party, Alton Atkinson. Those instructions specified that they related to escrow account number 39-5231-AH, the same account assigned to the Doublevision transaction. The instructions informed CES that Indie Film Holding, Inc., agreed to deposit an aggregate sum of $221,000, while Atkinson agreed to deposit an aggregate sum of $55,400,000 obtained via five standby letters of credit. Once both deposits were made, Atkinson's instructions provided that CES was to facilitate the exchange of those sums. Hardstone had dealt with Atkinson before without incident, and she remembered that the name of the company identified by Doublevision was similar to Indie Film Holding, so she erroneously believed Atkinson's instructions were the proper instructions for the Doublevision/IFE transaction and prepared them accordingly (*id.* ¶¶ 5, 7, Exhs. VI–VIII).

On April 28, Atkinson delivered his standby letter of credit and told Hardstone to close escrow on account number 39-5231-AH by distributing the monies therein, less fees paid to CES, to two companies designated by Atkinson. Hardstone followed Atkinson's instructions. That same day, a representative from Doublevision delivered escrow instructions for the Doublevision/IFE transaction, which conflicted with Atkinson's instructions. Neither Hardstone nor anyone else at CES read or considered those instructions until Hardstone had already closed

2

the account and distributed the monies therein pursuant to Atkinson's instructions (*id.* ¶ 8, Exh. V).

In May 2010, several representatives from Doublevision communicated with representatives of IFE in hopes of resuming the transaction, to no avail. Ultimately, IFE failed to procure its letter of credit in the time called for by the escrow instructions, so Doublevision sent a letter demanding that IFE pay the $100,000 liquidated damages fee. IFE did not respond. In June, Doublevision demanded that CES refund its $250,000 deposit. CES refused. With its capital gone, Doublevision could not complete the transaction with IFE or any other film fund (Miller Decl., Exh. F; Request for Judicial Notice Def.'s Mtn., Exh. A, Verified Compl.).

In October 2010, Doublevision filed suit in California state court. In *Doublevision Entertainment, LLC v. Commercial Escrow Services, Inc., et al.*, Contra Costa Superior Court, Case No. C10-03068 (the "underlying matter"), Doublevision asserted claims against both CES and Hardstone for breach of fiduciary duty, negligence, breach of contract, fraud, and unfair business practices arising out of the alleged mishandling of the escrow transaction. In its verified complaint, Doublevision's prayer for relief included both actual and punitive damages. It did not specifically pray for expectation damages, though it did pray for "such other and further relief as the court may deem proper." The verified complaint did not allege that IFE was ever in a position to deliver the $1.5 million that Doublevision contracted for. Nor did it allege that IFE would have performed but for CES's mishandling of the escrow transaction (*ibid.*).

CES and Hardstone tendered their defense in the underlying matter to our defendant herein, Navigators Specialty Insurance Company, with which they held two "eroding errors and omissions" insurance policies, each with an aggregate limit for all claims made under the policy of one million dollars, though the underlying matter was tendered under only one of those policies. Pursuant to that policy, the one million dollar aggregate limit would be "eroded" by the payment of both claim expenses (including defense costs) and damages. That is, defense costs were not separately provided for under the policies (Marcus Decl. Pl.'s Mtn., Exh. 1). This type of policy is also known as a "burning limit" or a "wasting limit" policy. Section I.D provided that Navigators' duties to indemnify and defend could be exhausted as follows:

3

**D.   Exhaustion of Limits.**

> [Navigators] is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted by the payment of **damages** or **claim expenses** or any combination thereof; or after [Navigators] has deposited the remaining available limit of liability into a court of competent jurisdiction or tendered the remaining available limit of liability to [CES] or, if applicable, to the excess insurer(s) of [CES].

Each policy gave Navigators the right to settle claims with consent from CES, though the policies would also cover settlements negotiated by CES, "provided any settlement [was] negotiated with [Navigators'] written consent . . ." (*id.*, Section I.C). The policies also provided that Navigators had the right and duty to defend CES against any claim (*id.*, Section I.B).

Navigators assigned the defense of CES and Hardstone in the underlying matter to a law firm, Long & Levit, PC. Attorney Glen Olson of Long & Levit was already defending CES in several other lawsuits in which CES was alleged to have mishandled escrow funds. Navigators reserved its rights to deny coverage in each of those matters, including the underlying matter (Marcus Decl. Pl.'s Mtn. ¶ 4).

On March 3, 2011, Doublevision presented CES and Hardstone with a settlement offer of $245,000 under the procedures of Section 998 of the California Code of Civil Procedure ("Section 998 offer"), which impose penalties on a party that refuses a written settlement offer and fails to ultimately achieve a better result than that offer.

On March 8, Attorney Olson delivered his initial evaluation of the underlying matter to Navigators. Attorney Olson advised Navigators that Doublevision was litigating the underlying matter aggressively, that it was unlikely he could successfully bring Atkinson or his companies into the litigation, and that it was likely that CES and Hardstone would be found liable. Attorney Olson estimated the range of liability exposure to be between $29,000 and $250,000 and recommended pursuing a settlement "toward the lower end of liability" (Marcus Decl. Def.'s Mtn., Exh. 3).

Also on March 8, Attorney Jessica MacGregor, a partner of Attorney Olson's at Long & Levit, provided Navigators with a summary of each of the five actions pending against CES for allegedly improperly handling escrow funds, which included an estimate of liability exposure in

4

1  each matter. Four of those lawsuits had been tendered to the same policy as the underlying
2  matter, so any expenses related to them drew on the same one million dollar policy limit as the
3  underlying matter. Attorneys Olson and MacGregor scheduled a phone call with Navigators for
4  March 9 to discuss this report, which took place on that date (*id*., Exhs. 4–5; Lapine Decl. Pl.'s
5  Mtn., Exh. ZZ).

6  On March 10, Attorney Olson transmitted Doublevision's Section 998 offer to CES and
7  Navigators. He reminded them of the pending Section 998 offer on March 22, noting that
8  Doublevision seemed to be trying to pressure the defense into a quick settlement. The
9  Section 998 offer expired in April 2011 and Navigators did not accept it. Doublevision's
10 standard-of-care expert for claim-handling, Stephen Prater, avers that Navigators' claim file for
11 CES contained no records indicating that Navigators discussed the Section 998 offer with CES.
12 Navigators does not dispute that point. As of the time the offer expired, the balance on CES's
13 policy with Navigators to which the underlying matter, among other litigation against CES, was
14 tendered was between $875,000 and $925,000. At that point, Attorney Olson estimated pretrial
15 fees and costs in the underlying matter would total over $175,000, with $42,300 already incurred
16 (Hardstone Decl. Pl.'s Mtn., Exhs. XI, XII; Lapine Decl. Pl.'s Mtn., Exh. Y at 6; Prater Decl.
17 ¶ 3).

18 In June 2011, Attorney Olson provided both Navigators and CES with an update on all
19 of the pending litigation against CES, including his expectations relating to settlements
20 and litigation expenses in all matters. He assured both Navigators and CES that they could
21 "comfortably resolve" the underlying matter up to the total litigation exposure despite the
22 multitude of claims against CES in other pending matters. Because Doublevision was litigating
23 aggressively, however, Attorney Olson recommended an expedient resolution before defense
24 costs got too high. He also cautioned that a new lawsuit against CES and Hardstone filed since
25 Attorney MacGregor sent Navigators the previous summary of pending litigation presented a
26 risk of expenses or liability exposure in excess of the policy limit, perhaps as high as one million
27 dollars on its own (Hardstone Decl. Pl.'s Mtn., Exh. XVII).

28

5

In July 2011, Doublevision provided its counsel with authorization to settle the underlying matter for as low as $200,000 (Metzger Decl. ¶ 6). At some point, though the record is not clear as to when, Hardstone informed Attorney Olson that she would be willing to settle the underlying matter for up to $300,000 (Hardstone Decl. Pl.'s Mtn. ¶ 28; Lapine Decl. Pl.'s Mtn. Exh. KK).

In September 2011, Attorney Olson recommended that CES file a Section 998 settlement offer to Doublevision of $150,000 to $160,000. He did not expect that Doublevision would accept that offer, but he wanted "to get them thinking about settlement." On November 30, CES and Hardstone filed a Section 998 offer for $100,000; that offer was not accepted (Hardstone Decl. Pl.'s Mtn., Exhs. XX–XXI).

In October 2011, the California Department of Corporations ("CDOC") initiated a series of administrative actions against CES arising out of alleged mishandling of its escrow business. In February 2012, a receiver was appointed to liquidate and wind up the trust affairs of CES (Request for Judicial Notice Def.'s Mtn., Exhs. P–Y).

Meanwhile, CES and Doublevision went to mediation on December 5, 2011, but did not reach an agreement. The trial date was then scheduled for November 2012, though it was ultimately delayed to June 2013.

On February 23, 2012, Attorney Olson informed CES and Navigators that he believed he could settle the underlying matter for between $300,000 and $325,000. He informed them that since CES had entered receivership it seemed more likely that Doublevision would seek to establish a "pattern and practice" of mishandling escrow funds, which placed both CES and Hardstone at risk of exposure to punitive damages. Viewing that risk in light of the increasing likelihood that Doublevision's recovery would exceed Doublevision's earlier (and now lapsed) Section 998 offer of $245,000, which would leave CES responsible for Doublevision's litigation costs, Attorney Olson told CES and Navigators that he believed $300,000 was a "favorable settlement" and formally requested authority from Navigators to settle for that amount. Navigators' claims file for CES contained no indication that it ever considered that request (Lapine Decl. Pl.'s Mtn., Exh. MM; Prater Decl. ¶ 4).

6

1    In July 2012, Navigators notified CES, the receiver, and CDOC that it intended to tender
2 the balance of the policy limit to Hardstone. CDOC objected because tendering the funds
3 directly to Hardstone might have violated the terms of the receivership and could subject both
4 Navigators and Hardstone to sanctions. Navigators did not tender the policy limit to Hardstone
5 (Marcus Decl. Def.'s Mtn. ¶ 14, Exh. 6).

6    In August 2012, Navigators filed an interpleader action in the Contra Costa County
7 Superior Court. It concurrently deposited the balance of the policy limit, $466,358.48, with the
8 court. At that time, there were no adverse judgments against CES for the claims that had been
9 tendered to Navigators. Navigators named CES, CDOC, and "Does 1 through 10" as defendants
10 in the interpleader action. In its first amended complaint in the interpleader action, Navigators
11 added Hardstone and the receiver as defendants (Request for Judicial Notice Def.'s Opp.,
12 Exhs. 1–3).

13    Doublevision, Long & Levit, and three other parties intervened in the interpleader action
14 in early 2013. On June 4, 2013, the Contra Costa Superior Court discharged and dismissed
15 Navigators from the interpleader action, with prejudice, and approved a stipulation for
16 distribution of the deposited funds among all defendants. Doublevision, alone among the
17 defendants, refused to release its claims against CES. The order discharging Navigators and
18 distributing the interpled funds reserved a share of $49,000 to be paid to Doublevision only if it
19 should win a judgment against CES or Hardstone (Hardstone Decl. Pl.'s Mtn., Exh. XXV;
20 Request for Judicial Notice Def.'s Opp., Exhs. 4–6).

21    In 2013, Doublevision won a judgment for $1.5 million plus interest against CES for
22 negligence, breach of contract, and breach of fiduciary duty. In 2014, CES assigned any rights it
23 had against Navigators under the insurance policy relating to the underlying matter to
24 Doublevision (Request for Judicial Notice Def.'s Mtn., Exh. H; Miller Decl. Def.'s Mtn.,
25 Exh. A).

26    In May 2014, Doublevision, as assignee of CES, filed the instant action in the
27 Contra Costa County Superior Court. The action was removed to federal court on the basis of
28

7

diversity jurisdiction. Defendant The Navigators Group, Inc., was dismissed from this action in October 2014.

Doublevision now moves for summary judgment that Navigators breached the terms of its policy with CES and that it breached the covenant of good faith and fair dealing based on: (1) breach of the duty to defend, (2) breach of the duty to indemnify, (3) breach of the duty to settle, (4) failure to investigate CES's insurance claims, and (5) bad faith in filing the interpleader. Doublevision also seeks summary judgment that it is entitled to $2,916,262 in damages, which includes attorney's fees that it claims are due according to *Brandt v. Superior Court*, 37 Cal. 3d 813, 819 (1985).

Navigators also moves for summary judgment that CES had no claims against Navigators at the time of its assignment of rights to Doublevision or, in the alternative, partial summary judgment that: (1) Navigators did not breach the covenant of good faith by allowing Doublevision's Section 998 settlement offer to expire, (2) Navigators did not breach the covenant of good faith in prosecuting the interpleader action, (3) Navigators is not liable for any breaches alleged in Doublevision's complaint for which it has proffered no evidence, and (4) Doublevision is not entitled to *Brandt* fees.

This order follows full briefing and oral argument.

## ANALYSIS

As the assignee of CES's rights under its policy agreement with Navigators, Doublevision "stands in the shoes" of CES and can only assert claims that CES had at the time it assigned its rights. *See Doser v. Middlesex Mutual Insurance Co.*, 101 Cal. App. 3d 883, 890 (1980).

**1.   THE INTERPLEADER.**

Doublevision claims that Navigators breached its contractual duty to defend CES in the underlying matter after it filed the interpleader and that it breached the implied covenant of good faith and fair dealing by filing the interpleader, leaving CES to pay for and conduct its own defense. Navigators argues that its duties under the policy ended when it filed the interpleader.

8

This order accepts the legal presumption that if and when Navigators in good faith effected a proper interpleader and deposited the remaining funds its duties under the insurance contract came to an end, but this summary judgment record is too fact-bound to decide conclusively when such a time arrived other than to say that by the time the interpleader court entered judgment, the interpleader action had been properly constituted. By way of counter example, when Navigators commenced the interpleader action, it did not bring Doublevision in as an intended claimant, and it even remains unclear under what conflicting claims Navigators found itself that warranted an interpleader. Later on, Doublevision intervened on its own, but that occurred many months later.

An interpleader clause cannot be used in bad faith simply as an escape hatch from an insurer's duty to defend after it has botched a defense of an insured and carelessly let favorable opportunities to settle vanish. So, this order accepts the legal presumption that when an insurer institutes or prosecutes an interpleader in bad faith and as a way to relieve itself of the burden of conducting a defense, then the insurer may be liable for the tort of bad faith refusal to defend the insured, at least so long as the interpleader action remains imperfectly constituted. Again, the summary judgment record is too fact-bound to say conclusively whether the insurer should or should not have tort liability for the handling of the interpleader.

A jury will have to decide.

### 2.  DUTY TO SETTLE.

"The implied covenant of good faith and fair dealing imposes a duty on the insurer to settle a claim against its insured within policy limits whenever there is a substantial likelihood of a recovery in excess of those limits." *Johansen v. California State Automobile Association International Insurance Bureau*, 15 Cal. 3d 9, 14–15 (1975). That claim accrues "only upon entry of a judgment in excess of policy limits" against the insured. *Archdale v. American International Specialty Lines Insurance Co.*, 154 Cal. App. 4th 449, 474 (2007). It is undisputed that judgment was entered against CES in excess of the policy limit.

Doublevision argues that Navigators breached the duty of good faith by failing to settle the underlying matter on three occasions: (1) by permitting Doublevision's Section 998 offer to

9

1  lapse, (2) by failing to authorize a settlement when the parties went to mediation, and (3) by
2  failing to authorize Attorney Olson to settle the underlying matter for $300,000. Doublevision
3  also argues that Navigators had an affirmative duty to make efforts to settle the litigation and
4  breached the duty of good faith by failing to make such an effort. Navigators opposes
5  Doublevision's motion and moves for partial summary judgment that it is not liable in bad faith
6  for allowing the Section 998 offer to expire.

### A.      The Section 998 Offer.

There is a genuine factual dispute as to whether Navigators acted in bad faith by failing to accept Doublevision's 998 offer. Although the remaining limit on the policy was between $875,000 and $925,000 at the time the offer was made, a reasonable jury could find that Navigators should have foreseen that Doublevision might recover damages in excess of its actual damages or that CES would benefit from resolving an aggressively litigated matter quickly while it was already engaged in several other disputes. On the other hand, a reasonable jury could find that Navigators estimated that CES's liability exposure in the underlying matter was within the policy limits in good faith and found that the slight discount of $5,000 off of an expected $250,000 liability exposure did not make Doublevision's Section 998 offer a fair settlement value. A jury must determine whether Navigators should have recognized that CES faced a substantial likelihood of judgment in excess of its policy limits at the time it let the offer lapse.

### B.      Subsequent Settlement Opportunities.

Navigators objects to Doublevision's arguments relating to subsequent settlement opportunities because Doublevision did not offer details such as the dates or amounts of those settlement opportunities in its complaint. Rather, Doublevision's complaint only alleged that "[s]ubsequent additional reasonable offers to settle within the Policy's limits were made by Doublevision to the Underlying CES Defendants" (Compl. ¶ 22). Navigators' argument is unpersuasive. This allegation was sufficient to inform Navigators of the basis for Doublevision's claim for relief. No more than this is required by FRCP 8(a).

Though it is undisputed that Doublevision authorized its counsel to settle the underlying matter for as low as $200,000 between July 2011 and December 2011, there is a genuine dispute

10

as to whether CES or Hardstone expressed an interest in settling the matter for that sum or more during that time and whether Navigators was ever informed of that interest. The parties also dispute whether Doublevision made an actual offer to settle the matter for $300,000 in early 2012 or whether the parties had only discussed that figure in the abstract. At oral argument, both sides noted that each side's counsel in the underlying matter were prepared to testify to conflicting accounts of Attorney Olson's decision to request authority to settle the matter at $300,000.

Even if the existence of either of those opportunities to settle were undisputed, Navigators' assessment of the risk of judgment in excess of policy limits at the time of those opportunities, given the balance remaining on the policy limit, Navigators' perspective on CES's liability exposure in the underlying matter and the other matters for which Navigators was providing a defense, and Navigators' projections of defense costs, must be evaluated by a jury.

### C. Affirmative Duty to Make a Settlement Offer.

Navigators claims it had no affirmative duty to make a settlement offer because "[n]othing in California law supports the proposition that bad faith liability for failure to settle may attach if an insurer fails to initiate settlement discussions or offer its policy limits, as soon as an insured's liability in excess of policy limits has become clear." *Reid v. Mercury Insurance Co.*, 220 Cal. App. 4th 262, 277 (2014). That decision specifically addressed whether an insurer had an affirmative duty to seek out a settlement *prior* to any indication from the plaintiff that there might be an "opportunity to settle." *Id.* at 277–78. An insurer that fails to make an affirmative offer once it is on notice that there is an opportunity to settle and a risk of recovery in excess of policy limits, however, could still be liable for bad faith. *Id.* at 272.

It is undisputed that Doublevision put Navigators on notice that it was willing to settle when Doublevision filed its Section 998 settlement offer. Navigators has put forth no evidence that it affirmatively pursued a settlement, but a reasonable jury could find that Navigators' failure to make an affirmative offer was not in bad faith given the circumstances surrounding CES's risk of liability exposure in excess of policy limits.

### 3. OTHER BREACHES ALLEGED BUT UNSUPPORTED BY FACTS.

If the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment against that party is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Navigators moves for partial summary judgment on all claims of alleged breaches of the implied covenant of good faith and fair dealing for which Doublevision has not proffered supporting facts. Three of the claims that Navigators identified warrant summary judgment in its favor.

Doublevision offers no evidence or argument whatsoever relating to the allegations that Navigators acted in bad faith by: (1) making false statements and (2) misrepresenting facts and policy terms (Compl. ¶¶ 33(h), (i)).

Doublevision's complaint also alleged that Navigators breached its duty to investigate claims. The only evidence Doublevision has proffered as to Navigators' investigation of CES's claim is that Attorney Samuel Marcus, who was the claims-adjuster working on CES's claims at Navigators, testified at his deposition that he could not recall doing independent legal research about the underlying matter (Pl.'s Mtn. at 24–25; Lapine Decl. Pl.'s Mtn., Exh. W). Doublevision has proffered no evidence that such research falls within the scope of responsibility of a claims-adjuster (as opposed to the defense counsel to which Navigators tendered the matter). No reasonable jury could infer from the fact that a claims-adjuster could not recall doing legal research that the insurer failed to "thoroughly and fairly investigate, process and evaluate the insured's claim." *Maslo v. Ameriprise Auto & Home Insurance*, 227 Cal. App. 4th 626, 636 (2014).

Because Doublevision has proffered no evidence of these allegations in its motion or in response to Navigators' motion, Navigators is entitled to summary judgment that it did not breach of the covenant of good faith by making false statements, misrepresenting facts or policy terms, or failing to investigate claims.

### 4. *BRANDT* FEES.

This order now turns to the so-called *Brandt* claim for attorney's fees. "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the

benefits due under a policy," the insured may recover that expense from the insurer, though it may not recover expenses "attributable to the bringing of the bad faith action itself." *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985).

Four different fees are at issue herein. With regards to fees incurred by Attorney Joel Grumbiner in defending CES and Hardstone in the interpleader, those fees, unless waived in the interpleader resolution, are recoverable up until the moment that the jury herein determines the interpleader was properly constituted in good faith. Prior to that point, the insured was properly litigating (indeed, forced to litigate by its insurer) over the contract benefits. After that point, however, the benefits of the policy ended. With regards to the fees for coverage counsel, the descriptions in the summary judgment record are so vague that this order will skip over making any ruling thereon. With regards to fees expended in the underlying matter (the Doublevision case), the insurer had a duty to defend CES under the contract at least up to the moment that the interpleader was properly constituted. If Attorney Andrew Dimitriou, CES and Hardstone's trial counsel, incurred fees only after this point, then the insured is not entitled to recover those fees as *Brandt* fees. With regards to fees incurred by Attorney Ryan Lapine in the instant action, Doublevision will be allowed to recover those fees, only to the extent it recovers (on behalf of CES) benefits under the policy as contract damages. Attorney time spent on tort recovery will not be permitted to be recovered as *Brandt* fees.

## CONCLUSION

To the extent discussed herein, defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**, and plaintiff's motion for summary judgment is **DENIED**. Summary judgment as to any issue not specifically addressed herein is **DENIED.**

Navigators raised several objections to the admissibility of evidence proffered by Doublevision in relation to the instant motions. The objectionable evidence was not necessary to this order. The motions to strike of Navigators are therefore **DENIED AS MOOT**, without prejudice to a future objection.

13

The parties requested judicial notice of certain documents relating to the underlying matter, parallel proceedings against CES, and the receivership. To the extent those documents are not relied upon herein, the parties' requests for judicial notice are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated:   June 25, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE