1  RYAN M. LAPINE, ESQ. (Cal. Bar No. 239316)
   rlapine@rmslaw.com
2  LUKE D. LIEBERMAN, ESQ. (Cal. Bar No. 284572)
   llieberman@rmslaw.com
3  JOSHUA H. HERR, ESQ. (Cal. Bar. No. 301775)
   jherr@rmslaw.com
4  ROSENFELD, MEYER & SUSMAN LLP
   232 North Canon Drive
5  Beverly Hills, California 90210-5302
   Telephone:  (310) 858-7700
6  Facsimile:  (310) 860-2430

7  RANDY M. HESS (SBN 88635)
   rhess@ahk-law.com
8  PAMELA A. BOWER (SBN 151701)
   pbower@ahk-law.com
9  NICOLE S. ADAMS-HESS (SBN 286632)
   nhess@ahk-law.com
10 ADLESON, HESS & KELLY
   A Professional Corporation
11 577 Salmar Avenue, Second Floor
   Campbell, California  95008
12 Telephone:  (408) 341-0234
   Facsimile:  (408) 341-0250

13
   Attorneys for Plaintiff
14 DOUBLEVISION ENTERTAINMENT, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUBLEVISION ENTERTAINMENT, LLC, a Tennessee limited liability company, as assignee of Commercial Escrow Services, Inc, a California corporation, and Antoinette Hardstone, an individual,<br><br>         Plaintiff,<br><br>    v.<br><br>NAVIGATORS SPECIALTY INSURANCE COMPANY; a New York corporation; THE NAVIGATORS GROUP, INC., a New York corporation; and DOES 1 through 50, inclusive,<br><br>         Defendants. | Case No. 3:14-cv-02848-WHA (JCS)<br><br>**PLAINTIFF DOUBLEVISION ENTERTAINMENT, LLC'S SUPPLEMENTAL BRIEFING RE EVIDENCE RELATING TO MEDIATION TO BE PRESENTED AT TRIAL** |

## I. INTRODUCTION

Pursuant to the Honorable Judge Alsup's Final Pretrial Order dated July 2, 2015, Plaintiff Doublevision Entertainment, LLC ("Doublevision") respectfully submits this brief setting forth the evidence it intends to present at trial related to the December 5, 2011 mediation that took place in the underlying litigation entitled *Doublevision Entertainment, LLC v. Commercial Escrow Services, Inc. et al.,* Contra Costa Superior Court No. C10-03068 (the "Underlying Litigation") and analyzing its admissibility. Saliently, Doublevision does not seek to present evidence "of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation", such that this information could be considered privileged under Section 1119 of the California Evidence Code ("Section 1119").

As the Court noted in its January 29, 2015 Order:

> Navigators, however, argues that the mediation privilege protects conduct, communications, and written materials related in any way to the mediation. This overreaches. Conduct is not protected by the mediation privilege, nor does Section 1119 use the language "related in any way" to a mediation. The mediation privilege is reserved for statements and communications made during the mediation, and, as discussed in more detail below, for a limited range of communications created immediately before and after the mediation.

Dkt. 43, 4: 16 – 21.

Via its sixth motion *in limine* and explicitly during oral arguments on July 1, 2015, Defendant Navigators Specialty Insurance Company ("NSIC") sought to overreach yet again, regurgitating its argument the Court previously rejected as it incredibly – and insultingly – believes the Court ruled on January 29, 2015 without having read the parties' moving papers. Dkt. 147-3, 5, and expand the mediation privilege afforded by Section 1119 far beyond its four corners.

Further, and of no small import, NSIC's attempt to exclude non-privileged admissible evidence that it finds inconvenient – and that demonstrates its systemic misconduct in the Underlying Litigation – lacks any whiff of good faith as its own expert explicitly stated in his report that NSIC acted properly as it "concentrated its settlement efforts and strategies pointing toward the mediation process." Expert Report of Stephen M. Crane (Proposed Exhibit No. 174) at page 7, a true and correct copy of which is attached hereto as Exhibit 1. He based that conclusion on the deposition of NSIC's claims handler Samuel Marcus, who testified that NSIC acted in good

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

504056.01

1

DOUBLEVISION'S SUPPLEMENTAL BRIEFING REGARDING EVIDENCE
RELATING TO MEDIATION -- CASE NO. 3:14-cv-02848-WHA (JCS)

faith as its "settlement effort were to schedule a mediation to see if we can resolve this claim" thereat. *Id.*

Thus, NSIC's explicitly stated defense in this matter is that it acted properly by trying to settle the Underlying Litigation at mediation. Doublevision would like to present non-privileged evidence that would allow a jury to conclude that this defense is meritless and that NSIC in fact breached the duty to settle at mediation. NSIC, on the other hand, seeks to block Doublevision from introducing any and all evidence that could either oppose its already advanced defense or that could impose on it liability for its non-privileged conduct at mediation, even where that evidence is not in any way privileged. This attempt to expand a limited privilege, yet again, far beyond its scope to intentionally mislead the jury, to insulate itself from liability for non-privileged conduct, and to prevent Doublevision from rebutting what is, frankly, a specious defense is improper under the law and should not be allowed.[1]

## II. ADMISSIBLE EVIDENCE DOUBLEVISION INTENDS TO PRODUCE

1. On March 3, 2011, Doublevision served by mail a statutory offer to compromise for $245,000 pursuant to California Code of Civil Procedure section 998 (the "998 Offer"). See Dkt. 110-4, 47-52. Douglas Dawson will testify that, as evidenced by this offer, Doublevision was willing at all times in 2011 to settle the Underlying Litigation for $245,000 and actually made that offer so that it would have room to negotiate down to its settlement floor of $200,000. He will further testify that at all times beginning in March of 2011, until a rather heated meeting amongst Doublevision's principals *after* the December 5, 2011 mediation, Doublevision's counsel had full authority to settle the Underlying Litigation for any number down to $200,000.

2. Glen Olson strongly encouraged NSIC to settle the Underlying Litigation throughout 2011 and particularly felt that it was in Commercial Escrow Services, Inc. and

---

[1] This strategy is particularly galling as it is wholly dishonest and misleading. NSIC intends to argue that it acted properly by attempting to settle the case at mediation when its conduct at mediation – not its statements, but its conduct, which is not at all covered by the privilege (Dkt. 43, 3:20 ("The privilege does not protect non-communicative mediation conduct")) – indicates that it was trying to do the opposite. By its sixth motion *in limine*, it is trying to exclude that not-privileged conduct so that it can make its misleading argument to the jury without a chance of rebuttal in hopes that the jury will rule on its wholly fallacious smoke and mirrors defense and not on the non-privileged facts which render that defense an absolute farce of a misleading joke.

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

504056.01

2
DOUBLEVISION'S SUPPLEMENTAL BRIEFING REGARDING
EVIDENCE RELATING TO MEDIATION - CASE NO. 3:14-cv-02848-WHA

Antoinette Hardstone's best interests to settle that matter at mediation on December 5, 2011. Dkt. 110-9, 84-88; Dkt. 111-2, 59-61; Dkt. 110-4, 36-41; Dkt. 110-8, 33-36. Glen Olson sent repeated correspondence to NSIC from the beginning of 2011 requesting that NSIC give him authority to settle the Underlying Litigation, emphasizing the high cost of litigating against Doublevision's aggressive counsel, clear liability of the insureds, and probability of a large verdict. Dkt. 110-9, 84-88; Dkt. 110-8, 38-42; Dkt. 111-2, 59-61, 63-66, 68, 70-73, 78-79. On September 14, 2011, Mr. Olson recommended settlement in an email he sent to Ms. Hardstone and NSIC, which recommended serving on Doublevision an offer to compromise at "$150,000 to $160,000", noting "[t]hey won't take it but maybe it is high enough to get them thinking about settlement." Dkt. 111-2, 70-73. In his deposition, Mr. Olson testified that NSIC outright rejected his request for $150,000 in settlement authority in the weeks proceeding the mediation. Dkt. 110-8, 13-15. Mr. Olson drafted a memorandum that noted that Hardstone wanted to settle the Doublevision Matter for up to $300,000, authority Hardstone provided well in advance of and unrelated to the December 5, 2011 mediation. Dkt. 111, 8-9, ¶¶ 27-28; Dkt. 110-8, 52-56. Doublevision intends to offer this evidence at trial in support of its position that Olson advocated for settlement, that Olson's position was that it was in Commercial Escrow Services, Inc. and Hardstone's best interests to settle at mediation and that Hardstone would approve settlement in the Underlying Matter for up to $300,000 beginning in the autumn of 2011 and unrelated to any mediation communications.

3.  Doublevision intends to introduce into evidence the applicable NSIC policy which states:

"The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the **Company**." Dkt. 111-2, 9.

This indicates that Hardstone could not unilaterally use Policy funds to settle the Underlying Matter without the consent of NSIC, which is something Hardstone understood. during the pendency of the Underlying Litigation. Dkt. 111, 9, ¶ 30.

4. On November 30, 2011, Ms. Hardstone was asked if she would consent to provide authority for a $100,000 offer to compromise, to be served on Doublevision. Dkt. 111, 8, ¶ 26. Ms. Hardstone consented and that offer was served. *Id.*; Dkt. 111-2, 74-76. She indicated that she wanted to settle all matters against her. Dkt. 111, 9, ¶ 28. Doublevision will introduce this evidence and testimony in support of its position that NSIC was put on notice of its insureds' desire to settle the Underlying Matter in advance of the December 5, 2011 mediation.

5. The California Department of Corporations (the "DOC") appointed a limited receiver and took possession of Commercial Escrow Services, Inc. in late 2011. Dkt. 111, 8, ¶ 27. This put Ms. Hardstone in dire financial straights. *Id.* Ms. Hardstone put NSIC on notice, prior to the December 5, 2011 mediation, of the DOC's action by tendering it to NSIC for defense. *Id.*; Dkt. 123, 16-19. NSIC denied coverage for those claims. Dkt. 123, 16-19. Doublevision intends to introduce this evidence to demonstrate that prior to the mediation, Hardstone and Commercial Escrow Services, Inc. were in no financial position to settle the Underlying Litigation without the monies in the Policy and that NSIC was on notice of this fact.

6. Doublevision will introduce evidence that a mediation took place on December 5, 2011, before the Honorable Alfred Chiantelli (Ret.), of ADR Services, Inc. and the case did not settle at that mediation.

7. After the mediation, aside from the neutral, (who agreed to abide by any ruling from Judge Alsup) all participants, including parties and their counsel in the December 5, 2011 mediation except for Eric Moon have executed a written waiver of any and all privileged afforded by California Evidence Code § 1119 and otherwise related to that mediation. Dkt. 48, 154-159. Despite evidence offered to date to the contrary, no representative from NSIC participated in that mediation, a point that will be confirmed at trial with documentary evidence. Doublevision intends to offer this testimony to demonstrate that NSIC, itself, did not even attend or participate in the mediation and its counsel is the only participant who wishes to keep that mediation confidential.

8. Doublevision hopes that this evidence will allow the jury to infer that as Commercial Escrow Services, Inc. and Ms. Hardstone wanted to settle for a number up to

1  $300,000, as Doublevision wanted to settle for a number down to $200,000, as Olson believed
2  settlement was in his client's best interests, and as NSIC failed to even participate in the mediation
3  aside from sending an outside attorney on its behalf, that NSIC failed to authorize settlement at
4  some number between $200,000 and $300,000 at the December 5, 2011 mediation in the
5  Underlying Litigation that had been agreed to by all parties to that action. It intends to present that
6  at opening and closing statements, cognizant that the jury may not reach that same conclusion and
7  the NSIC may argue that perhaps another inference can be drawn from this non-privileged
8  evidence.

### III. ARGUMENT

**A. Doublevision seeks to Introduce Non-Privileged Evidence at Trial, which Indicates that NSIC Breached the Duty to Settle by Failing to Participate at Mediation**

In its sixth motion *in limine*, NSIC again erroneously attempts to characterize admissible, non-privileged evidence relevant to Doublevision's claims against it as "privileged" in order to keep the jury from considering evidence that eviscerates its defense.[2] California's mediation privilege, as set forth solely in Section 1119, simply does not extend to protect the evidence that Doublevision seeks to bring in at trial. For all of the reasons this Court articulated in its January 29, 2015 ruling on NSIC's Motion for a Protective Order (Dkt. 43) and for all of the reasons set forth herein, Doublevision is entitled to bring in all of the above referenced evidence, and it would be a miscarriage of justice to preclude that evidence.

Section 1119 is a statutory privilege, applying only to: "communications, negotiations, or settlement discussions by and between participants in the course of a mediation or mediation consultation" and to "writing[s] ... prepared for the purpose of, in the course of, or pursuant to a mediation or a mediation consultation" Cal. Evid. Code §1119. Section 1119 is the authority that provides the framework for the admissibility of oral and written communications generated during the mediation process. *Cassel v. Superior Court,* 51 Cal. 4th 113, 123 (2011). None of the evidence that Doublevision seeks to admit at trial is protected by California's mediation privilege,

---

[2] This Court has already ruled on this issue finding that the mediation privilege does not extend to anything "related to mediation." Dkt. 43.

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

504056.01

5

DOUBLEVISION'S SUPPLEMENTAL BRIEFING REGARDING
EVIDENCE RELATING TO MEDIATION - CASE NO. 3:14-cv-02848-WHA

Section 1119. Section 1119 provides:

> No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or mediation consultation shall remain confidential.

Cal. Evid. Code §1119.

The evidence that Doublevision seeks to introduce at trial, as set forth in Section II, *supra*, cannot be categorized as "communications, negotiations, or settlement discussions by and between participants in the course of a mediation or mediation consultation" or "writing[s] ... prepared for the purpose of, in the course of, or pursuant to a mediation or a mediation consultation" such that they fall within the ambit of Section 1119's protections. Doublevision does not seek to introduce evidence of statements made during mediation or of documents prepared solely in preparation for mediation. Instead, Doublevision seeks to introduce evidence that exists outside of the narrow protections of Section 1119. For example, at trial, Douglas Dawson will testify as set forth in Section II, ¶ 1, *supra*, that Doublevision was willing to settle the Underlying Litigation for as low as $200,000 starting in March 2011 until after the conclusion of the 2011 mediation. This is not a protected mediation communication or a protected mediation writing. Another example, Doublevision will seek to have Hardstone testify that well before the mediation, she authorized her counsel and NSIC to settle the Underlying Litigation on behalf of the CES Parties for up to $300,000, and that she had serious concerns about her financial condition after the Department of Corporations took over CES. Section II, ¶¶ 2, 5, *supra*. This evidence is neither a protected mediation communication or a mediation writing. In addition, the fact that Olson sent numerous

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

504056.01

6
DOUBLEVISION'S SUPPLEMENTAL BRIEFING REGARDING
EVIDENCE RELATING TO MEDIATION - CASE NO. 3:14-cv-02848-WHA

communications over the course of 2011 to NSIC advising it of the high cost of litigating what was a clear case of liability against the insureds, with a high risk of a substantial verdict against the insured, coupled with the high cost of litigating against an unrelenting and aggressive plaintiff's counsel is not privileged. Section II. ¶2, *supra*. These examples are not exhaustive, but are snapshots of the evidence, none of which are "communications, negotiations, or settlement discussions by and between participants in the course of a mediation or mediation consultation" or "writing[s] ... prepared for the purpose of, in the course of, or pursuant to a mediation or a mediation consultation" that Doublevision seeks to admit at trial.

The non-privileged evidence that Doublevision intends to produce at trial concerns: unprotected conduct, communications that occurred prior to the mediation, not prepared for the purposes of mediation, and communications and conduct that occurred after the mediation privilege terminated by operation of law, on December 15, 2011. Dkt. 43, 3:19-21; *Cal Evid. Code* § 1125(a)(5)("For purposes of confidentiality under this chapter, a mediation ends when any one of the following conditions is satisfied: For 10 calendar days, there is no communication between the mediator and any of the parties to the mediation relating to the dispute...")[3]

The above are all non-privileged evidence of conduct, facts, or other admissible evidence that are not communications made for the purpose of or during the mediation. NSIC cannot use the fact that a mediation occurred as a shield to fend off non-privileged evidence and argument related to the mediation that supports Doublevision's claims that it unreasonably refused to settle the Underlying Litigation.

---

[3] As this Court noted in its January 29, 2015 Order, "[t]he mediation terminated on December 15 because— as conceded by both parties at oral argument — December 15, 2011, marked the tenth calendar day with no communication between the parties and the mediator." Dkt. 43, 3:19-21. Anything that occurred after December 15, 2011 is unquestionably unprotected by Section 1119 as it occurred after the termination of the mediation.

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

504056.01

7

DOUBLEVISION'S SUPPLEMENTAL BRIEFING REGARDING
EVIDENCE RELATING TO MEDIATION - CASE NO. 3:14-cv-02848-WHA

### B. NSIC Impermissibly Asks this Court to Act as the California Legislature and Expand the Mediation Privilege

By its sixth *Motion in limine,* NSIC asks this Federal Court to take on the role of the California Legislature to expand the plain language of Section 1119. In so doing, NSIC seeks an unlawful remedy.

"[T]he Legislature has decreed there are no privileges except as provided by statute. Cal. Evid. Code, § 911. Courts are not free to create additional privileges by common law." *Marylander v. Superior Court*, 81 Cal.App.4th 1119, 1126 (2000).

Indeed, not only are there no common law privileges, but courts are not free to expand those few privileges statutorily created absent the most extraordinary circumstances:

> Judicial construction, and judicially crafted exceptions, are permitted only where due process is implicated, or where literal construction would produce absurd results, thus clearly violating the Legislature's presumed intent. Otherwise, the mediation confidentiality statutes must be applied in strict accordance with their plain terms. Where competing policy concerns are present, it is for the Legislature to resolve them. [citations omitted]

*Cassel v. Superior Court,* 51 Cal. 4th 113, 124 (2011)

As *Cassel* makes clear, the only possible exception to strict adherence to limits of Section 1119 would be to obviate the mediation privilege altogether where only the party against whom liability is sought seeks to enforce the privilege to avoid scrutiny into its misconduct and all other parties have waived the privilege. *Cassel, supra*, 51 Cal.4th at 139-140 (Chin concurring). The Court has previously declined to do so. Having previously declined to limit Section 1119 where authority would allow such a limitation, Doublevision requests that the Court not now expand Section 1119 where there is no authority to justify such an expansion.

Notably, the Court already rejected this request, holding:

> In accordance with the plain language of Section 1119, this order now protects oral and written statements and communications — evidence of anything said — made during the mediation. Navigators, however, argues that the mediation privilege protects conduct, communications, and written materials related in any way to the mediation. This overreaches. Conduct is not protected by the mediation privilege, nor does Section 1119 use the language "related in any way" to a mediation. The mediation privilege is reserved for statements and communications made during the mediation, and, as discussed in more detail below, for a limited range of communications created immediately before and after the mediation. Protected statements and communications made *during* the mediation include those made between December 5 and December 15, 2011."

8

LAW OFFICES
ROSENFELD,
MEYER &
SUSMAN LLP

504056.01

DOUBLEVISION'S SUPPLEMENTAL BRIEFING REGARDING
EVIDENCE RELATING TO MEDIATION - CASE NO. 3:14-cv-02848-WHA

Dkt. 43, 4:14-23.

### C. NSIC Cannot Selectively use the Mediation Privilege to Manufacture a Rationale for its Bad Faith Conduct while Precluding Doublevision from Introducing Contrary Evidence

Doublevision is entitled to present non-privileged evidence to rebut NSIC's specious defense that it acted in good faith to resolve the Underlying Litigation at the December 5, 2011 mediation. Not only is this contention not supported by any shred of evidence (See Section II, ¶¶ 1-8), permitting NSIC to make this contention, without allowing Doublevision to rebut it with admissible, non-privileged evidence, would be unjust.

NSIC's own expert has stated in his report that NSIC acted properly as it "concentrated its settlement efforts and strategies pointing toward the mediation process." Expert Report of Stephen M. Crane, 7. He based that conclusion on the deposition of NSIC's claims handler Samuel Marcus, who testified that NSIC acted in good faith by seeking to resolve the Underlying Matter at mediation. *Id.* It did no such thing. Both of these contentions lack merit and are unsupported by evidence.

What the non-privileged evidence shows is that all parties to the Underlying Matter, including their counsel, hoped to settle the Underlying Litigation and had settlement ranges that overlapped between $200,000 and $300,000. Section II. ¶¶ 1-2, *supra*. The only impediment to a settlement agreed upon by Doublevision and the CES parties was NSIC's approval of said settlement; NSIC's consent was required in order for the CES Parties to use any NSIC insurance policy proceeds to fund a settlement. Section II. ¶ 3, *supra*. With Hardstone and Doublevision willing to settle somewhere between $200,000 and $300,000 at the time of mediation, and Olson's recommending settlement based on his dismal forecast of the result of the Underlying Litigation, an inference can be drawn from these facts is that NSIC, in fact, did not consent to settlement and blocked a settlement of the Underlying Litigation at mediation. *See* Section II. ¶¶ 1-8, *supra*. Importantly, this will allow a jury to conclude that NSIC's defense is meritless and that it should be held liable. Plainly, NSIC should not be allowed to allude to the mediation to justify that it

acted properly and Doublevision *not* be allowed to allude to the mediation to argue that NSIC acted improperly. (This would be a particular miscarriage of justice considering what actually happened at the mediation.)

NSIC's proposed defense will mislead the jury unless Doublevision is permitted to introduce non-privileged, admissible evidence to rebut this defense. As the finder of fact, it is "the exclusive province of the jury" to "determine issues such as witness credibility, and weight to be given contradictory evidence." *Granite State Ins. Co. v. Smart Modular Technologies, Inc.*, No. C 90-3136 BAC, 1994 WL 173858, at *2 (N.D. Cal. Apr. 28, 1994) aff'd, 76 F.3d 1023 (9th Cir. 1996). In asserting this defense, NSIC opens the door so that that Doublevision may admit contrary evidence so that the jury may fulfill its role in ascertaining the truth. NSIC has not and cannot proffer any explanation as to why Doublevision may not introduce the evidence as set forth in *See* Section II. ¶¶ 1-8, *supra*. especially in light of its intention to offer evidence of its purported good faith conduct at mediation, Doublevision is certainly entitled to offer its contrary rendition, supported by non-privileged, admissible evidence.

### IV. CONCLUSION

For the reasons set forth herein, Doublevision respectfully requests that the Court allow it to introduce the evidence and argument set forth herein so that it can: (a) rebut NSIC's defense that it acted properly by attempting to settle the Underlying Matter at mediation; and (b) ask the jury to infer from non-privileged evidence that NSIC breached its duties by blocking settlement at the December 5, 2011 mediation.

Dated: July 6, 2015

RYAN M. LAPINE, ESQ.
JOSHUA H. HERR, ESQ.
ROSENFELD, MEYER & SUSMAN LLP

By: */s/ Ryan M. Lapine*
Ryan M. Lapine

Attorneys for Plaintiff DOUBLEVISION ENTERTAINMENT, LLC

# EXHIBIT 1

DOUBLEVISION ENTERTAINMENT, LLC, *et al.*
NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York Corporation

USDC Northern District of California Case Number: C3:14-02848 WHA

# EXPERT REPORT
# OF
# STEVEN M. CRANE

March 30, 2015



Steven M. Crane

to artificially deplete the limit by paying the 998 Offer demand at that time, based on the information NSIC had. This is especially true in a situation where there is a "wasting limit" and competing claims to a limited fund, as here. (*See, e.g.,* AHARD 003289) It would be contrary to industry customs and practices and standards and unreasonable for NSIC not to try to negotiate as low a settlement as possible on behalf of CES so that the policy limit was not depleted more than it absolutely needed to be. The 998 Offer did not allow negotiation since a 998 offer is either accepted or not accepted. Moreover, acceptance of the 998 Offer would become a public judgment against CES, which would have negatively impacted NSIC's and CES's ability to negotiate for lower settlements in the other cases and claims against CES, thereby impacting CES's ability to get as much liability resolved as possible with the policy limits available.

To my knowledge, after the 998 Offer, Doublevision did not make any other settlement demands outside of mediation for NSIC to consider. (See, *e.g.* Olson Depo., p. 332) NSIC's claims-handling actions regarding defense, settlement and the process thereof were consistent with industry customs and practices and standards, including making its own 998 Offer. (*See,* Nav 008981) Doublevision refused to engage in settlement discussions after the 998 Offer expired until Doublevision's discovery motions were decided and Doublevision made it known that thereafter settlement discussions should proceed by way of mediation. (Olson Depo., p. 82, 235, Exh. 59) As a result, NSIC concentrated its settlement efforts and strategies pointing toward the mediation process. (Marcus Depo., p. 171) Meanwhile, defense counsel used their best efforts and judgment to limit defense activities and costs. (Exh. 59) NSIC also had to assess and