1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   DOUBLEVISION ENTERTAINMENT, LLC, a
     Tennessee limited liability company, as assignee of
11   Commercial Escrow Services, Inc., a California
     corporation, and Antoinette Hardstone, an
12   individual,                                              No. C 14-02848 WHA

13              Plaintiff,

14      v.

15   NAVIGATORS SPECIALTY INSURANCE
     COMPANY, a New York Corporation,
16

17              Defendant.
     _____ /

18

19

20          **COURT'S PROPOSED CHARGE TO THE JURY**

21              **AND SPECIAL VERDICT FORM**

22          **SUBMITTED TO COUNSEL AND FILED ON JULY 17, 2015.**

23          Appended hereto are copies of the draft charge to the jury and special verdict form given

24   to both sides today, for discussion with the Court at the charging conference on JULY 20 at

25   1:00 P.M.  Although counsel have filed numerous waves of overlapping and even contradictory

26   proposed instructions in the past, the proposed charge is based on the way the trial has actually

27   developed, taking into account issues that have emerged and receded and concessions by

28   counsel.  The Court believes the proposed charge adequately and fairly covers all issues

     actually still in play.  Therefore, in order to give the district judge a fair opportunity to correct

**United States District Court**
For the Northern District of California

any error as matters now stand, counsel must, at the charging conference, bring to the judge's attention any addition, subtraction or modification or other objections or proposal for the jury instructions.  Otherwise, all such points shall be deemed waived.  Any proposal that counsel still care about must be raised anew.  Any brief is due by **10:00 P.M. ON SUNDAY.**  Meanwhile, please do not rely to your detriment on this draft.  Make your evidentiary record.

**IT IS SO ORDERED.**

Dated:  July 17, 2015

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

2

United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUBLEVISION ENTERTAINMENT, LLC, a
Tennessee limited liability company, as assignee
of Commercial Escrow Services, Inc., a California
corporation, and Antoinette Hardstone, an
individual,

        Plaintiff,

  v.

NAVIGATORS SPECIALTY INSURANCE
COMPANY,

        Defendant.

No. C 14-02848 WHA

**PROPOSED JURY INSTRUCTIONS**

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUBLEVISION ENTERTAINMENT, LLC, a
Tennessee limited liability company, as assignee of
Commercial Escrow Services, Inc., a California
corporation, and Antoinette Hardstone, an
individual,

        Plaintiff,

  v.

NAVIGATORS SPECIALTY INSURANCE
COMPANY, a New York Corporation,

        Defendant.

                              /

No. C 14-02848 WHA

**[DRAFT]**
**FINAL CHARGE TO THE JURY**
**AND SPECIAL VERDICT FORM**

1.

      Members of the jury, now that you have heard all the evidence and arguments by

counsel, it is my duty to instruct you on the law that applies to this case.  A copy of these

instructions will be available in the jury room for you to consult as necessary.

      It is your duty to find the facts from all the evidence in the case.  To those facts, you will

apply the law as I give it to you.  You must follow the law as I give it to you whether you agree

United States District Court
For the Northern District of California

with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.  In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything the Court may have said or done as suggesting what verdict you should return — that is a matter entirely up to you.

2.

The evidence from which you are to decide what the facts are consists of:

1.  The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2.  The exhibits which have been received into evidence;

3.  The sworn testimony of witnesses in depositions, read into evidence; and

4.  Any facts to which the lawyers have stipulated.  You must treat any stipulated facts as having been conclusively proved.

3.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.  You should base your decision on all of the evidence regardless of which party presented it.

United States District Court

For the Northern District of California

4.

In reaching your verdict, you may consider only the types of evidence I have described. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. A suggestion in a question by counsel or the Court is not evidence unless it is adopted by the answer. A question by itself is not evidence. Consider it only to the extent it is adopted by the answer.

3. Objections by lawyers are not evidence. Lawyers have a duty to their clients to consider objecting when they believe a question is improper under the rules of evidence. You should not be influenced by any question, objection or the Court's ruling on it.

4. Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered. In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

5. Anything you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

5.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it or none of it. In considering the testimony of any witness, you may take into account:

**United States District Court**
For the Northern District of California

1.      The opportunity and ability of the witness to see or hear or know the things testified to;

2.      The witness' memory;

3.      The witness' manner while testifying;

4.      The witness' interest in the outcome of the case and any bias or prejudice;

5.      Whether other evidence contradicted the witness' testimony;

6.      The reasonableness of the witness' testimony in light of all the evidence; and

7.      Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  Nor does it depend on which side called witnesses or produced evidence.  You should base your decision on all of the evidence regardless of which party presented it.

6.

You are not required to decide any issue according to the testimony of a number of witnesses, which does not convince you, as against the testimony of a smaller number or other evidence, which is more convincing to you.  The testimony of one witness worthy of belief is sufficient to prove any fact.  This does not mean that you are free to disregard the testimony of any witness merely from caprice or prejudice, or from a desire to favor either side.  It does mean that you must not decide anything by simply counting the number of witnesses who have testified on the opposing sides.  The test is not the number of witnesses but the convincing force of the evidence.

7.

A witness may be discredited or impeached by contradictory evidence or by evidence that, at some other time, the witness has said or done something or has failed to say or do something that is inconsistent with the witness' present testimony.  If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

**United States District Court**
For the Northern District of California

8.

Discrepancies in a witness' testimony or between a witness' testimony and that of other witnesses do not necessarily mean that such witness should be discredited. Inability to recall and innocent misrecollection are common. Two persons witnessing an incident or a transaction sometimes will see or hear it differently. Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness willfully false in one part of his or her testimony is to be distrusted in others. You may reject the entire testimony of a witness who willfully has testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors his or her testimony in other particulars.

9.

In determining what inferences to draw from evidence you may consider, among other things, a party's failure to explain or deny such evidence.

10.

You have heard testimony from witnesses referred to as "expert witnesses." These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case. If an expert witness was not present at the events in question, his or her opinion is necessarily based on an assumed set of circumstances. In evaluating the opinion during the trial, you should take into account the extent to which you do agree or do not agree with the circumstances assumed by the expert witness.

11.

All parties are equal before the law and a corporation, including an insurance company, is entitled to the same fair and conscientious consideration by you as any party.

**United States District Court**
For the Northern District of California

12.

In these instructions, I will often refer to a party's "burden of proof."  Let me explain what that means.  When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.  To put it differently, if you were to put the evidence favoring a plaintiff and the evidence favoring a defendant on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side.  If the party fails to meet this burden, then the party with the burden of proof loses on that issue.  Preponderance of the evidence basically means "more likely than not."

13.

On any claim, if you find that plaintiff carried its burden of proof as to each element of a particular claim, your verdict should be for plaintiff on that claim.  If you find that plaintiff did not carry its burden of proof as to each element, you must find against plaintiff on that claim.  This same principle also supplies to defendants on claims for which it has the burden of proof.

14.

I will now turn to the law that governs the claims asserted in this case.  All of the claims before you are being asserted on behalf of Ms. Hardstone and her company, CES, against their insurance company, Navigators Special Insurance Company.  Those claims are now owned by Doublevision Entertainment LLC, but Doublevision stands in the shoes of Ms. Hardstone and CES in their suit against Navigators.  Doublevision has no greater or lesser rights than Ms. Hardstone and CES.

**CLAIM ONE**

**ALLEGED DUTY TO ACCEPT SETTLEMENT OFFER**

15.

Plaintiff asserts that Navigators breached a duty to settle the Doublevision claim against Ms. Hardstone and CES by rejecting the so-called Section 998 offer of $245,000 to

United States District Court

For the Northern District of California

1    settle the Doublevision litigation made in March 2011.  I will now explain the law governing

2    this claim.

3

4                                            16.

5            You have heard references to a "Section 998 offer," so let me briefly explain it.

6    Section 998 of the California Code of Civil Procedure allows any party to file and serve a

7    written offer to compromise the entire case in exchange for a specified sum of money.  The

8    written offer remains open for thirty days.  The other side may accept unconditionally the offer

9    and that ends the case with a judgment.  If the offer is not unconditionally accepted, then the

10   offer is deemed rejected and withdrawn after thirty days.

11                                           17.

12           Now, let's turn to the general issue.  An insurance policy is a contract.  All contracts

13   are deemed to include an obligation of good faith and fair dealing by each party toward the

14   other.  A contract need not actually say this.  The obligation of good faith and fair dealing is

15   always implied by the law into all contracts, including all insurance policy contracts.

16                                           18.

17           For insurance policies, the covenant of good faith and fair dealing obligates the insurer,

18   among other things, to accept a reasonable offer to settle a covered lawsuit against the insured

19   within the policy limits whenever there is a substantial likelihood of a recovery in excess of the

20   remaining policy limits.  In such a case, an insurer that fails to accept a reasonable settlement

21   offer within the remaining policy limits will be held liable for the entire judgment against the

22   insured, even when that judgment exceeds the policy limits.  The insurer must evaluate the

23   reasonableness of an offer to settle a lawsuit against the insured by considering the probability

24   of liability of the insured and the probable range of any liability.  A settlement demand is

25   reasonable if the insurer knows or should know at the time the settlement demand is rejected

26   that the potential judgment is likely to exceed the amount of the settlement demand.  An

27   insurer's duty to accept a reasonable settlement offer in these circumstances is implied in law

28   to protect insureds from exposure to liability in excess of coverage.

**United States District Court**
For the Northern District of California

19.

In order to recover on its claim for refusal to accept the Section 998 offer to settle made in March 2011, plaintiff must prove each of the following:

(1)     That Doublevision brought a lawsuit against CES and Ms. Hardstone for a claim covered by the Navigators' insurance policy;

(2)     That Navigators failed to accept a reasonable settlement offer for an amount within the remaining policy limits; and

(3)     That a monetary judgment was entered against CES and Ms. Hardstone for a sum greater than the remaining policy limits.

20.

The size of the judgment recovered in the underlying action when it exceeds the policy limits, although not conclusive, allows but does not require the jury to infer that the reasonable value of the claim at the time of the offer was the amount of the ultimate judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim.

21.

When the insurer determines that its insured faces multiple claims from multiple claimants, all of which are covered by the same policy, and the potential exposure posed by all such claims exceeds the remaining policy limits, then the insurance company, in deciding whether to pay a settlement demand by one claimant, may take into account the need to save some of the remaining policy limit to defend against and to pay or settle other claims.  In evaluating this additional exposure, the insurer may take into account the risk of liability and extent of probable loss posed by the other claims.  By the same token, the insurer should also take into account that continuing to litigate, rather than settle, will continue to reduce the policy limit under an eroding policy (like the one at issue in our trial) and, thus, reduce the amount available for future settlements, judgments and costs of defense.  If the insured would be better served by conserving some of the available funds to meet other claims, then the insurer acts reasonably in taking this factor into account.

22.

If plaintiff has otherwise proven the three elements above, the burden is on the insurer to prove that its rejection of the offer was in the best interests of the insured and if the insurer does so, then the insurer should not be held liable for the rejection.

**CLAIM TWO**

**ALLEGED DUTY TO PURSUE SETTLEMENT**

23.

Apart from the Section 998 offer in March 2011, plaintiff also asserts that Navigators violated a duty to attempt to effectuate a settlement of the Doublevision litigation once that liability allegedly became reasonably clear and once it became reasonably clear that a verdict would exceed the remaining policy limits.

24.

To prevail on this claim, plaintiff must prove:

(1)     That Doublevision brought a lawsuit against Ms. Hardstone and CES for a claim covered by Navigators' insurance policy;

(2)     That it became reasonably clear before trial that Doublevision would prevail against Ms. Hardstone and CES and that the verdict would likely exceed the remaining policy limits at the time of the verdict;

(3)     That it became reasonably clear before trial that Doublevision was receptive to a settlement offer within the then-available policy limits;

(4)     That Navigators failed to make a good faith effort to settle the case within the available policy limits; and

(5)     That a monetary judgment was entered against Ms. Hardstone and CES for a sum greater than the remaining policy limits.

25.

United States District Court

For the Northern District of California

1    Again, the insurer, in deciding whether or the extent to which to make a settlement

2  offer may take into account the possible need to save some of the remaining policy limits to

3  defend against or pay or settle other claims, as stated above.

4

5                                                  26.

6    If plaintiff has otherwise proven the five elements above, the burden is upon the insurer

7  to prove that its failure to pursue settlement more aggressively was, in light of other pending

8  claims against the insured, in the best interest of the insured by conserving funds for those

9  other claims.

10

11                                       **CLAIM THREE**

12                                       **DUTY TO DEFEND**

13                                                  27.

14    Plaintiff's next claim is that Navigators breached its duty to defend, specifically

15  alleging that Navigators breached its duty to CES and Ms. Hardstone in the Doublevision

16  litigation by ceasing to pay defense counsel upon commencing the so-called "interpleader

17  action" by Navigators.  I will explain interpleader actions to you after first covering an

18  important provision in the insurance contract that deals with interpleader actions.

19                                                  28.

20    So long as there were policy limits remaining, meaning at least some of the million

21  dollars remained, Navigators had a duty under the insurance contract to defend Ms. Hardstone

22  and CES in the Doublevision litigation.  The insurance contract in this case, however, included

23  a clause sometimes referred to in this trial as an "interpleader clause."  It was part of a longer

24  paragraph and I will read all of that paragraph to you.  As used therein, the word "Company"

25  means Navigators.  The paragraph stated:

26           The Company is not obligated to pay any damages or claim
              expenses or to defend or continue to defend any claim after the
27           applicable limit of liability has been exhausted by the payment of
              damages or claim expenses or any combination thereof; or after the
28           Company has deposited the remaining available limit of liability
              into a court of competent jurisdiction or tendered the remaining

                                                   13

**United States District Court**
For the Northern District of California

> available limit of liability to the Named Insured or, if applicable, to the excess insurer(s) of the Named Insured.

The clause of most immediate import is the passage stating that the Company's duties would come to an end "after the Company has deposited the remaining available limit of liability into a court of competent jurisdiction."  Although this language did not use the word "interpleader," an interpleader action was a type of litigation contemplated by this clause.  Specifically, Navigators contends in this trial that once it commenced its interpleader action and deposited the remaining policy limits into the court registry, the interpleader clause absolved it from any further obligation of any type to the insured and, thus, Navigators could terminate all further payments to defense counsel for Ms. Hardstone and CES.

29.

Specifically, you have seen evidence in the complaint for intervention filed by Navigators that the Receiver appointed by the California Department of Corporations demanded that Navigators pay $195,700 to the Department of Corporations.  This demand was contested by Ms. Hardstone and CES.  One issue for you to decide is whether or not Navigators acted properly in depositing the full amount of the remaining policy limit, namely $466,358 rather than only the $195,750 demanded by the Receiver.  Plaintiff contends that only the $195,750 should have been deposited and that the remainder of $270,608 should have been retained by Navigators to use for the defense of Ms. Hardstone and CES.  Navigators contends that all of the $466,358 should have been deposited into the interpleader action.

30.

To evaluate this issue, it is necessary to back up and to explain interpleader actions. Interpleader actions fill a special need for judicial relief from conflicting claims against a single asset.  Specifically, the need for an interpleader lawsuit arises when two or more persons assert a claim to entitlement against the same asset or money held by a stakeholder.  Let me give you an example, a simple trust fund.  Assume two or more persons claim to be the sole beneficiary entitled to $1,000 in a larger trust fund.  Of course, only one claimant can really be the sole beneficiary to the $1,000.  To resolve this conflict, the trustee, as a mere stakeholder with no claim himself for entitlement to the fund, can file an interpleader lawsuit, summon the

14

United States District Court

For the Northern District of California

1   two supposed beneficiaries into court, deposit the portion of the fund in controversy into the

2   registry of the court, disclaim all interest therein, and then ask the court to accept the

3   interpleader action as properly framed, to require the two beneficiaries to plead and to litigate

4   their conflicting claims against each other, and to exonerate and to excuse the trustee entirely

5   from the case on the ground the trustee need not be further involved.  If the court does so, then

6   the two beneficiaries will fight it out in court in the normal way and the winner will get the

7   deposit.  Meanwhile, the trustee washes his hands of the dispute.

8                                                          31.

9          Before a court can exonerate the stakeholder and excuse it from the interpleader action,

10   the court must find that the stakeholder has served a summons and complaint on all necessary

11   claimants, that the stakeholder has deposited the contested money or property into the registry

12   of the court, that the stakeholder has disclaimed all interest therein, and that the complaint in

13   interpleader has stated a proper basis for requiring the named defendants to interplead against

14   each other and to litigate against each other.  Until the court discharges the stakeholder, it

15   always remains possible that the court may dismiss the interpleader action and return the

16   money or property to the stakeholder.

17                                                          32.

18          With that understanding of interpleader actions, let's return to the paragraph in the

19   insurance contract, the one with the so-called interpleader clause.  The entire paragraph, which

20   I read to you a moment ago, describes scenarios in which all of the obligations of the insurer to

21   the insured come to an end.  One scenario is when the policy limits are all paid out through

22   payment of settlement, judgments and cost of defense.  Another is when the insurer turns over

23   in cash to the insured all of the remaining policy limit, thus leaving the insured to manage its

24   allocation among settlements, judgments or cost of defense as the insured deems best.  The

25   interpleader clause is similar in the sense that, if the entirety of all remaining policy limits are

26   deposited into a court of competent jurisdiction in an interpleader action, then the insurer will

27   be deemed to have exhausted the entire policy limit and have no further obligation to the

28   insured.

33.

Significantly, however, the interpleader clause does not define the circumstances in which an interpleader can be properly used as to some or as to all of the remaining policy limits.  Rather, it merely states that *once all* of the remaining funds are placed into an interpleader action of competent jurisdiction, then the obligations of the insurer come to an end.  The clause necessarily leaves it to the general rules and law of interpleader action to define when it would be proper to commence an interpleader action.  Therefore, the interpleader clause itself presupposes a proper interpleader action to begin with.  It does not automatically absolve Navigators of any and all obligations to the insured merely by filing an interpleader action and depositing the full remaining balance.  The interpleader must be proper as to the amount deposited.

34.

In the present case, a point of contention is whether Navigators erred in placing all of the remaining policy limits into the interpleader action — versus only some of it.  This is important because had Navigators retained some of those funds, it could have, to that extent, continued to pay for the defense of Ms. Hardstone and CES.

35.

Under the law of interpleader, if some or all of the remaining policy limits was subject to conflicting claims of entitlement, then Navigators acted properly in commencing an interpleader action as to the portion subject to that conflict — but *only* as to that portion, not more.  The rest of the funds could then be used to continue paying for the defense of Ms. Hardstone and CES.  To take a simple example, if only $5,000 was subject to conflicting claims, then Navigators could seek interpleader only as to the $5,000, not as to the full remaining policy limit.  The rest would then be available for the defense of Ms. Hardstone and CES.

36.

You have heard evidence that when the interpleader started in August 2012, the Department of Corporations and the insureds were the only defendants named in the

**United States District Court**

For the Northern District of California

16

interpleader suit and the only persons summoned into the interpleader action.  Doublevision and other similar claimants were not named or served as defendants in the interpleader action.

37.

If you find that the full amount deposited by Navigators was proper, then you must find for Navigators on this issue.  If you find that Navigators deposited more than was subject to conflicting demands by the named defendants, then you must find that Navigators violated its duty to defend by divesting itself unnecessarily of money that would have gone to support the defense of Ms. Hardstone and CES.

38.

If you find that Navigators violated its duty to defend, then in determining the extent of damages, you may consider a possible offset.  Navigators contends that depositing the full $466,358 into the interpleader court benefitted Ms. Hardstone and CES by conserving resources for settlement of multiple claims.  You may take into account the extent to which had Navigators continued to defend Ms. Hardstone and CES, it would have continued to deplete the remaining funds available to settle, pay or defend all claims.  This might, in turn, have prejudiced the ability of Navigators and the defense to resolve the array of suits and claims.  That, in turn, might have prejudiced Ms. Hardstone and CES by exposing them to suits and claims that otherwise, in the actual event, got resolved.  The burden is on Navigators to prove the extent to which any damages you find from a breach of the duty to defend should be reduced by any such offsetting benefit.

39.

If you find for plaintiff on any claim, you must then decide the extent of damages proven by plaintiff.  The amount of your award should be in an amount, if proven, that would compensate Ms. Hardstone and CES for the harm caused by any breach you have found. Remember that even though Doublevision is the benefit, it is standing in the shoes of

United States District Court
For the Northern District of California

17

Ms. Hardstone and CES and your damage award must be assessed accordingly.  You may not speculate or guess in awarding damages but plaintiff does not have to prove damages with exactitude.

40.

Any award for future economic damages must be for the present cash value of those damages.  Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages would have been received.  The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill.

41.

If you award damages on multiple claims, you must also indicate a total to eliminate any overlapping damages and to prevent double counting, as set forth in the special verdict form.

42.

When you begin your deliberations, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict as to each claim and as to damages, if any, must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having

United States District Court

For the Northern District of California

made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

I will give you a special verdict form to guide your deliberations.  However, you do not need to address the questions in the precise order listed.

43.

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

44.

As I noted before the trial began, when you retire to the jury room to deliberate, you will have with you the following things:

1.      All of the exhibits received into evidence;

2.      An index of the exhibits;

3.      A work copy of these jury instructions for each of you;

4.      A work copy of the verdict form for each of you; and

5.      An official verdict form.

When you recess at the end of a day, please place your work materials, if any, in the brown envelope provided and cover up any easels with your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

45.

A United States Marshal will be outside the jury-room door during your deliberations.  If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone — including me — how the jury stands, numerically

United States District Court

For the Northern District of California

1   or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not

2   disclose any vote count in any note to the Court.

3                                                          46.

4          You have been required to be here each day from 7:45 A.M. to 1:00 P.M.  Now that you

5   are going to begin your deliberations, however, you are free to modify this schedule within

6   reason.  For example, if you wish to continue deliberating in the afternoons after a reasonable

7   lunch break, that is fine.  The Court does, however, recommend that you continue to start your

8   deliberations by 8:00 A.M.  If you do not reach a verdict by the end of today, then you will

9   resume your deliberations tomorrow and thereafter.

10         It is very important that you let the Clerk know in advance what hours you will be

11  deliberating so that the lawyers may be present in the courthouse at any time the jury is

12  deliberating.

13                                                         47.

14         You may only deliberate when all of you are together.  This means, for instance, that in

15  the mornings before everyone has arrived or when someone steps out of the jury room to go to

16  the restroom, you may not discuss the case.  As well, the admonition that you are not to speak to

17  anyone outside the jury room about this case still applies during your deliberation.

18                                                         48.

19         After you have reached a unanimous agreement on a verdict, your foreperson will fill in,

20  date and sign the verdict form and advise the Court that you have reached a verdict.  The

21  foreperson should hold onto the filled-in verdict form and bring it into the courtroom when the

22  jury returns the verdict.  Thank you for your careful attention.  The case is now in your hands.

23  You may now retire to the jury room and begin your deliberations.

24

25

26  Dated:                                    _____[DRAFT]_____

27                                                      WILLIAM ALSUP
                                                        UNITED STATES DISTRICT JUDGE
28

United States District Court

For the Northern District of California

1

2

3                                    IN THE UNITED STATES DISTRICT COURT

4

5                                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7     DOUBLEVISION ENTERTAINMENT, LLC, a
      Tennessee limited liability company, as
8     assignee of Commercial Escrow Services, Inc.,
      a California corporation, and Antoinette
9     Hardstone, an individual,                                    No. C 14-02848 WHA

10                 Plaintiff,

11      v.                                                          **SPECIAL VERDICT
                                                                   FORM**
12    NAVIGATORS SPECIALTY INSURANCE
      COMPANY, a New York Corporation,
13
                   Defendant.
14    _____/

15

16           **YOU MAY APPROACH THE FOLLOWING QUESTIONS IN ANY ORDER YOU WISH, BUT YOUR

17    ANSWERS MUST BE UNANIMOUS.**

18

19           1A.    Has plaintiff proven that it is entitled to recover damages from Navigators based

20    on the alleged refusal to accept the so-called Section 998 offer in March 2011?

21

22                 Yes, proven _____          No, not proven _____

23

24           1B.    If you answered "yes, proven," then state the amount of damages, if any, proven

25    by plaintiff on this claim.

26

27                               $ _____

28

1    2A.    Has plaintiff proven that it is entitled to recover damages from Navigators based

2    on the alleged failure to pursue a settlement after the March 2011 Section 998 offer lapsed?

3

4            Yes, proven  _____            No, not proven _____

5

6    2B.    If you have answered "yes, proven" then state the amount of damages, if any,

7    proven by plaintiff on this claim.

8

9                            $ _____

10

11    3A.    Has plaintiff proven that it is entitled to damages from Navigators for violating

12    its duty to defend?

13

14            Yes, proven  _____            No, not proven _____

15

16    3B.    If you have answered "yes, proven" then state the amount of damages, if any,

17    proven by plaintiff on this claim.

18

19                            $ _____

20

21    4.    If you have awarded damages for more than one of the questions above, please

22    state the total amount of damages you award, eliminating all double (or triple) counting.

23

24                            $ _____

25

26

27    Date:   July __, 2015.                     ___[DRAFT]_____

                                                 **FOREPERSON**

28

22