IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUBLEVISION ENTERTAINMENT, LLC, a Tennessee limited liability company, as assignee of Commercial Escrow Services, Inc., a California corporation, and Antoinette Hardstone, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York Corporation,<br><br>    Defendant.<br>_____/ | No. C 14-02848 WHA |

**FINAL CHARGE TO THE JURY**

1.

Members of the jury, now that you have heard all the evidence and arguments by counsel, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be available in the jury room for you to consult as necessary.

It is your duty to find the facts from all the evidence in the case. To those facts, you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case. In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the Court may have said or done as suggesting what verdict you should return — that is a matter entirely up to you.

2.

The evidence from which you are to decide what the facts are consists of:

   1. The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;
   2. The exhibits which have been received into evidence;
   3. The sworn testimony of witnesses in depositions, read into or played into evidence; and
   4. Any facts to which the lawyers have stipulated. You must treat any stipulated facts as having been conclusively proved.

3.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose,

may explain the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence. You should base your decision on all of the evidence regardless of which party presented it.

4.

In reaching your verdict, you may consider only the types of evidence I have described. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. A suggestion in a question by counsel or the Court is not evidence unless it is adopted by the answer. A question by itself is not evidence. Consider it only to the extent it is adopted by the answer.

3. Objections by lawyers are not evidence. Lawyers have a duty to their clients to consider objecting when they believe a question is improper under the rules of evidence. You should not be influenced by any question, objection or the Court's ruling on it.

4. Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered. In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

5. Anything you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

5.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it or none of it. In considering the testimony of any witness, you may take into account:

1. The opportunity and ability of the witness to see or hear or know the things testified to;

2. The witness' memory;

3. The witness' manner while testifying;

4. The witness' interest in the outcome of the case and any bias or prejudice;

5. Whether other evidence contradicted the witness' testimony;

6. The reasonableness of the witness' testimony in light of all the evidence; and

7. Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. Nor does it depend on which side called witnesses or produced evidence. You should base your decision on all of the evidence regardless of which party presented it.

6.

You are not required to decide any issue according to the testimony of a number of witnesses, which does not convince you, as against the testimony of a smaller number or other evidence, which is more convincing to you. The testimony of one witness worthy of belief is sufficient to prove any fact. This does not mean that you are free to disregard the testimony of any witness merely from caprice or prejudice, or from a desire to favor either side. It does mean that you must not decide anything by simply counting the number of witnesses who have testified on the opposing sides. The test is not the number of witnesses but the convincing force of the evidence.

7.

A witness may be discredited or impeached by contradictory evidence or by evidence that, at some other time, the witness has said or done something or has failed to say or do something that is inconsistent with the witness' present testimony. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

8.

Discrepancies in a witness' testimony or between a witness' testimony and that of other witnesses do not necessarily mean that such witness should be discredited. Inability to recall and innocent misrecollection are common. Two persons witnessing an incident or a transaction sometimes will see or hear it differently. Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness willfully false in one part of his or her testimony is to be distrusted in others. You may reject the entire testimony of a witness who willfully has testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors his or her testimony in other particulars.

9.

In determining what inferences to draw from evidence you may consider, among other things, a party's failure to explain or deny such evidence.

10.

You have heard testimony from witnesses referred to as "expert witnesses." These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case. If an expert witness was not present at the events in question, his or her opinion is necessarily based on an assumed set of circumstances. In evaluating the opinion

during the trial, you should take into account the extent to which you do agree or do not agree with the circumstances assumed by the expert witness.

11.

All parties are equal before the law and a corporation, including an insurance company, is entitled to the same fair and conscientious consideration by you as any party.

12.

In these instructions, I will often refer to a party's "burden of proof." Let me explain what that means. When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. To put it differently, if you were to put the evidence favoring a plaintiff and the evidence favoring a defendant on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side. If the party fails to meet this burden, then the party with the burden of proof loses on that issue. Preponderance of the evidence basically means "more likely than not."

13.

On any claim, if you find that plaintiff carried its burden of proof as to each element of a particular claim, your verdict should be for plaintiff on that claim. If you find that plaintiff did not carry its burden of proof as to each element, you must find against plaintiff on that claim. This same principle also applies to defendant on issues for which it has the burden of proof.

14.

I will now turn to the law that governs the claims asserted in this case. All of the claims before you are being asserted on behalf of Ms. Hardstone and her company, CES, against their insurance company, Navigators Specialty Insurance Company. Those claims are now owned by Doublevision Entertainment LLC, but Doublevision stands in the shoes of Ms. Hardstone and CES in their suit against Navigators. Doublevision has no greater or lesser rights than Ms. Hardstone and CES.

**CLAIM ONE**

**ALLEGED BREACH OF DUTY TO ACCEPT SETTLEMENT OFFER**

15.

Plaintiff asserts that Navigators breached a duty to settle the Doublevision claim against Ms. Hardstone and CES by rejecting the Section 998 offer of $245,000 to settle the Doublevision litigation made in March 2011. I will now explain the law governing this claim.

16.

You have heard references to a "Section 998 offer," so let me briefly explain it. Section 998 of the California Code of Civil Procedure allows any party to file and serve a written offer to compromise the entire case in exchange for a specified sum of money. When served by mail, as here, the written offer remains open for thirty-five days. The other side may accept unconditionally the offer and that ends the case with a judgment. If the offer is not unconditionally accepted, then the offer is deemed rejected and withdrawn after thirty-five days.

17.

Now, let's turn to the general issue. An insurance policy is a contract. All contracts are deemed to include an obligation of good faith and fair dealing by each party toward the other. A contract need not actually say this. The obligation of good faith and fair dealing is always implied by the law into all contracts, including all insurance policy contracts.

18.

For insurance policies, the covenant of good faith and fair dealing obligates the insurer, among other things, to accept a reasonable offer to settle a covered lawsuit against the insured within the policy limits whenever there is a substantial likelihood of a recovery in excess of the remaining policy limits. When an insurer unwarrantedly refuses such an offer, it will be held liable for the entire judgment against the insured, even when that judgment exceeds the policy limits. The insurer must evaluate the reasonableness of an offer to settle a lawsuit against the insured by considering the probability of liability of the insured and the probable range of any liability. A settlement demand is reasonable if the insurer knows or should know at the time the settlement demand is rejected that the potential judgment is likely to exceed the amount of the

7

settlement demand. An insurer's duty to accept a reasonable settlement offer in these circumstances is implied in law to protect insureds from exposure to liability in excess of coverage.

19.

In order to recover on its claim for refusal to accept the Section 998 offer to settle made in March 2011, plaintiff must prove each of the following:

(1) That Doublevision brought a lawsuit against CES and Ms. Hardstone for a claim covered by the Navigators' insurance policy;

(2) That Navigators failed to accept a reasonable settlement offer for an amount within the remaining policy limits;

(3) That a monetary judgment was entered against CES and Ms. Hardstone for a sum greater than the remaining policy limits; and

(4) That at the time of the offer, there was a substantial likelihood of a recovery in excess of the remaining policy limits.

20.

The size of the judgment actually recovered in the underlying action when it exceeds the policy limits, although not conclusive, raises (but does not require) the inference that the reasonable value of the claim at the time of the offer was the amount of the ultimate judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim.

21.

This case presents a further consideration in deciding whether a settlement offer is reasonable and should be accepted, namely the pendency of other claims against the same insured. When the insurer determines that its insured faces multiple claims from multiple claimants, all of which are covered by the same policy, and that the potential exposure posed by all such claims exceeds the remaining policy limits, then the insurance company, in deciding whether to pay a settlement demand by one claimant, should take into account the potential need to save some of the remaining policy limit to defend against and to pay or settle other

claims. In evaluating this additional exposure, the insurer should take into account the risk of liability and extent of probable loss posed by the other claims. By the same token, the insurer should also take into account that continuing to litigate, rather than settle, will continue to reduce the policy limit under an eroding policy (like the one at issue in our trial) and, thus, reduce the amount available for future settlements, judgments and costs of defense. If the insured would be better served by conserving some of the available funds to meet other claims, then the insurer acts reasonably in taking this factor into account in declining to accept what would otherwise be a reasonable offer.

**CLAIM TWO**

**ALLEGED BREACH OF DUTY TO PURSUE SETTLEMENT**

22.

Apart from the Section 998 offer in March 2011, plaintiff also asserts that Navigators violated a duty to attempt to pursue a settlement of the Doublevision litigation once that liability allegedly became reasonably clear and once it became reasonably clear that a verdict would exceed the remaining policy limits.

23.

To prevail on this claim, plaintiff must prove:

(1) That Doublevision brought a lawsuit against Ms. Hardstone and CES for a claim covered by Navigators' insurance policy;

(2) That it became reasonably clear before trial that Doublevision would prevail against Ms. Hardstone and CES and that the verdict would likely exceed the policy limits expected to be remaining at the time of judgment;

(3) That Doublevision had communicated to Navigators an interest in settlement or that there were some other circumstances demonstrating that Navigators knew settlement within policy limits could feasibly be negotiated;

(4) That Navigators failed to make a reasonable effort to settle the case within the available policy limits; and

9

    (5) That a monetary judgment was entered against Ms. Hardstone and CES for a sum greater than the remaining policy limits.

24.

Once again, in deciding whether the insurer acted reasonably with respect to any settlement strategy, you should take into account the extent to which, if at all, the insurer tried to act in the best interests of the insured by conserving resources to meet other exposure from other claims.

## CLAIM THREE

## BREACH OF THE DUTY TO DEFEND

25.

Plaintiff's next claim is that Navigators breached its duty to defend, specifically alleging that Navigators breached its duty to CES and Ms. Hardstone in the Doublevision litigation by ceasing to pay defense counsel upon filing its complaint for interpleader.

26.

The duty to provide a defense is a primary duty of an insurer under an errors and omissions policy. In this case, so long as there were policy limits remaining, meaning at least some of the million dollars remained, Navigators had a duty under the insurance contract to defend Ms. Hardstone and CES in the Doublevision litigation and any other litigation covered by the policy. The insurance contract in this case, however, included a paragraph providing that the duty to defend would cease in some circumstances. This was under the heading "Exhaustion of Limits." As used therein, the word "Company" means Navigators. I will read to you the entire paragraph, which stated as follows:

> The Company is not obligated to pay any damages or claim expenses or to defend or continue to defend any claim after the applicable limit of liability has been exhausted by the payment of damages or claim expenses or any combination thereof; or after the Company has deposited the remaining available limit of liability into a court of competent jurisdiction or tendered the remaining available limit of liability to the Named Insured or, if applicable, to the excess insurer(s) of the Named Insured.

The clause of most immediate importance is the passage stating that the Company's obligations would come to an end "after the Company has deposited the remaining available limit of

liability into a court of competent jurisdiction." Although this language did not use the word "interpleader," an interpleader action was a type of litigation contemplated by this clause.

Specifically, Navigators has contended that once it filed its complaint for interpleader and deposited all of the remaining policy limits into the court registry, the clause absolved it from any further obligation of any type to Ms. Hardstone and CES, including to provide a defense. The Court respectfully disagrees with Navigators on this point and will now explain why.

27.

You have seen evidence in the complaint for interpleader filed by Navigators that the Receiver appointed by the California Department of Corporations had demanded that Navigators pay $195,750 to the Department of Corporations. This demand was contested by Ms. Hardstone and CES. For reasons I am now going to explain, under the law, Navigators' deposit in court should have been limited to the $195,750 demanded by the Receiver and the remainder of the remaining policy limit, namely $270,608, should *not* have been deposited and should been kept by Navigators to continue paying for the defense of Ms. Hardstone and CES.

28.

It is necessary to back up a moment and to explain interpleader actions. Interpleader actions fill a special need for judicial relief from conflicting claims against a single asset. Specifically, the need for an interpleader lawsuit arises when two or more persons assert a claim to entitlement against the same asset or money held by a stakeholder. Let me give you an example, a simple trust fund. Assume two persons claim to be the sole beneficiary entitled to $1000 in a larger trust fund. Of course, only one claimant can really be the sole beneficiary to the $1000. To resolve this conflict, the trustee, as a mere stakeholder with no claim himself for entitlement to the fund, can file an interpleader lawsuit, summon the two supposed beneficiaries into court, deposit the $1000 in controversy into the registry of the court, disclaim all interest therein, and then ask the court to require the two beneficiaries to plead against each other, that is, to interplead against each other, and then to litigate their conflicting claims against each other. Once that occurs, the trustee can ask the court to exonerate it and to excuse the trustee

11

1  entirely from the case. If the court does grant this relief, then the two beneficiaries will fight it
2  out in court in the normal way of litigation and the winner will get the $1000. Meanwhile, once
3  discharged, the trustee will be completely out of the litigation.

29.

Before a court can exonerate the stakeholder (the trustee in our example) and excuse it from the interpleader action, the court must find that the stakeholder has served a summons and complaint on all necessary claimants, that the stakeholder has deposited the contested money or property into the registry of the court, and that the stakeholder has disclaimed all interest therein. After reviewing the allegations in the complaint, the court may order the named defendants to interplead against each other and to litigate against each other. Until the court discharges the stakeholder, it always remains possible that the court may dismiss the interpleader action and return the money or property to the stakeholder.

30.

With that understanding of interpleader actions, let's return to the paragraph in the insurance contract. The entire paragraph, which I read to you a moment ago, describes scenarios in which all of the obligations of the insurer to the insured come to an end. One scenario is when the policy limits are exhausted through payment of settlement, judgments, and cost of defense, all expended for the benefit of the insured. Another is when the insurer turns over in cash to the insured all of the remaining policy limit, thus leaving the insured to manage its allocation among settlements, judgments, or cost of defense as the insured deems best. Again, in such a scenario the insured has received the full benefit of the policy. The clause in question is similar in the sense that, if the entirety of all remaining policy limits are properly deposited into a court of competent jurisdiction, then the insurer will be deemed to have exhausted the entire policy limit and have no further obligation to the insured. But the clause is different because when all remaining funds are deposited with a court, the insured by definition has not yet obtained the full benefit of the policy.

12

31.

Significantly, the clause does not define the circumstances in which the insurer may properly deposit all of the money in a court of competent jurisdiction or in which a complaint for interpleader can be properly used to deposit all of the remaining policy limits. Rather, the clause merely provides that *once all* of the remaining funds are placed into a court of competent jurisdiction, then the obligations of the insurer come to an end. The clause necessarily depends on the law of interpleader actions to prescribe the proper amount for a deposit in an interpleader action.

The clause in question cannot and should not, under the law, be construed to automatically allow the insurer to place the entire remaining policy limit into a court without regard to whether or not any legal justification exists for doing so. Instead, the clause must be limited to situations in which a legal justification warrants placing the entire remaining policy limits into a court. Otherwise, the insurer could unilaterally and arbitrarily terminate its duty to defend, regardless of any justification, simply by placing all remaining funds in a court registry.

32.

Under the law of interpleader, if some or all of the remaining policy limits was subject to conflicting claims of entitlement against Navigators, then Navigators was entitled to commence an interpleader action as to the portion subject to that conflict — but *only* as to that portion, not more. The rest of the funds should have been retained by Navigators to continue paying for the defense of Ms. Hardstone and CES. To take a simple example, if only $5000 was subject to conflicting claims, then Navigators could have sought interpleader only as to that $5000, not as to the full remaining policy limit. The rest would have continued to be available for the defense of Ms. Hardstone and CES.

33.

The complaint for interpleader filed by Navigators in the Superior Court for Contra Costa County is Trial Exhibit 38. (An amended complaint is Trial Exhibit 424.) The only sum alleged by Navigators to be subject to conflicting claims was $195,750, the amount demanded from Navigators by the Receiver appointed by the California Department of Corporations and

contested by Ms. Hardstone and CES. These three were the only defendants named in the complaint for interpleader, and the $195,750 was all that was in contest among those defendants. Doublevision and other plaintiffs against Ms. Hardstone and CES were not named as defendants in the interpleader action and none of them had made a claim against Navigators anyway.

In these circumstances, Navigators should have limited its deposit in court to the $195,750 and kept the $270,608 to continue to pay for the defense of Ms. Hardstone and CES, its duty under the errors and omissions policy. By failing to do so, Navigators breached its duty to defend Ms. Hardstone and CES. Thus, I am now obliged to instruct you that, under the law, plaintiff is entitled to recovery on its third claim, although not necessarily in the amount (or any amount) requested by plaintiff. Whether this breach was done in good faith or bad faith is irrelevant. It is not a question of good faith or bad faith. It was a breach of contract.

34.

Eventually, after the interpleader action was filed and the full deposit made, Ms. Hardstone and CES reached an agreement with Navigators to allow $270,608 to be released to Ms. Hardstone and CES, but this agreement never got final approval or became effective. Although this would have mitigated the fix in which the insureds found themselves, the insureds should not have been placed in this position in the first place. This subsequent circumstance did not cure or excuse the breach.

35.

Several months after Navigators made the deposit and ceased paying for a defense, several of the plaintiffs suing Ms. Hardstone and CES, like Doublevision, made motions to intervene in the interpleader action. This led to a settlement in June 2013 memorialized in Trial Exhibit 75. I instruct you that this circumstance did not retroactively validate the error by Navigators in depositing more than the $195,750. Nevertheless, this circumstance may possibly mitigate any damages from the error, and I will now instruct you on this point.

36.

In your deliberations, you must consider a possible offset. Navigators contends that depositing the full $466,358 into the interpleader court benefitted Ms. Hardstone and CES by conserving resources for settlement of multiple claims. You may take into account the extent to which, had Navigators continued to defend Ms. Hardstone and CES, it would have continued to deplete the remaining funds available to settle, pay or defend all claims. This might, in turn, have prejudiced the ability of the defense to resolve the array of suits and claims. That, in turn, might have prejudiced Ms. Hardstone and CES by exposing them to suits and claims that otherwise, in the actual event, got resolved. The burden is on Navigators to prove the extent to which damages should be offset.

37.

You have heard evidence that Long & Levitt and Doublevision refused to release Ms. Hardstone and CES in the June 2013 settlement. I instruct you that they were within their rights in refusing to do so. You have also heard evidence about the filing and prosecution of lawsuits against Ms. Hardstone and CES. I instruct you that the filing of the complaint for interpleader in no way operated as a stay or injunction against these lawsuits. These lawsuits were free to proceed forward against Ms. Hardstone and CES, notwithstanding the interpleader action.

38.

Although I have ruled against Navigators' interpretation of the contract, you should not take this in anyway as indicating that Navigators acted improperly with respect to any issue you must decide.

39.

To simplify the issues for you, both sides have agreed that the amount of damages on any claim for which liability is found will be $2,280,000. This is not an admission in any way that liability should be found. This is only a simplification by counsel for your benefit. All you need to decide are the liability issues on claims one and two and the amount of any offset. The Court will do the math and enter judgment for the agreed on amount minus any offset you find.

40.

When you begin your deliberations, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict as to each claim and as to the offset, if any, must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

I will give you a special verdict form to guide your deliberations. However, you do not need to address the questions in the precise order listed.

41.

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

42.

As I noted before the trial began, when you retire to the jury room to deliberate, you will have with you the following things:

1. All of the exhibits received into evidence;
2. An index of the exhibits;
3. A work copy of these jury instructions for each of you;
4. A work copy of the verdict form for each of you; and
5. An official verdict form.

16

When you recess at the end of a day, please place your work materials, if any, in the brown envelope provided and cover up any easels with your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

43.

A United States Marshal will be outside the jury-room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

44.

You have been required to be here each day from 7:45 A.M. to 1:00 P.M. Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason. For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine. The Court does, however, recommend that you continue to start your deliberations by 8:00 A.M. If you do not reach a verdict by the end of today, then you will resume your deliberations tomorrow and thereafter.

It is very important that you let the Clerk know in advance what hours you will be deliberating so that the lawyers may be present in the courthouse at any time the jury is deliberating.

45.

You may only deliberate when all of you are together. This means, for instance, that in the mornings before everyone has arrived or when someone steps out of the jury room to go to

the restroom, you may not discuss the case. As well, the admonition that you are not to speak to anyone outside the jury room about this case still applies during your deliberation.

46.

After you have reached a unanimous agreement on a verdict, your foreperson will fill in, date and sign the verdict form and advise the Court that you have reached a verdict. The foreperson should hold onto the filled-in verdict form and bring it into the courtroom when the jury returns the verdict. Thank you for your careful attention. The case is now in your hands. You may now retire to the jury room and begin your deliberations.

Dated: July 22, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUBLEVISION ENTERTAINMENT, LLC,
a Tennessee limited liability company, as
assignee of Commercial Escrow Services, Inc.,
a California corporation, and Antoinette
Hardstone, an individual,

    Plaintiff,

  v.

NAVIGATORS SPECIALTY INSURANCE
COMPANY, a New York Corporation,

    Defendant.

No. C 14-02848 WHA

**SPECIAL VERDICT**

**YOU MAY APPROACH THE FOLLOWING QUESTIONS IN ANY ORDER YOU WISH, BUT YOUR ANSWERS MUST BE UNANIMOUS.**

    1.    Has plaintiff proven that Navigators violated a duty to accept the Section 998 offer in March 2011?

    Yes \_\_\_\_                  No \_\_\_\_

      2.      Has plaintiff proven that Navigators violated a duty to pursue a settlement after the March 2011 Section 998 offer?

              Yes \_\_\_\_                    No \_\_\_\_

      3.      The Court directs the jury that plaintiff is entitled to recovery on its third claim, although not necessarily in the amount (or any amount) requested by plaintiff. You need not further consider this claim except as to the offset issue below. (You must still decide the first two claims.)

      4.      The parties have agreed that if liability is found on any claim, including the third claim, then the grand total of any recovery will be $2,280,000. This agreement should not be viewed in any way as an admission of liability on any claim. Rather, it is intended by both sides merely to simplify the issues for the jury. Nevertheless, you must decide the amount, if any, of any offset to reduce this amount. State the amount, if any, that Navigators has proven should be offset against the damages.

              $_____

Date: July \_\_, 2015.                        _____
                                                                        **FOREPERSON**

**United States District Court**
For the Northern District of California