1

2

3

4

5

6        IN THE UNITED STATES DISTRICT COURT

7        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   DOUBLEVISION ENTERTAINMENT,
     LLC, a Tennessee limited liability
11   company, as assignee of Commercial          No. C 14-02848 WHA
     Escrow Services, Inc., a California
12   corporation, and Antoinette Hardstone, an
     individual,
13
              Plaintiff,
14
        v.
15
     NAVIGATORS SPECIALTY                          **ORDER DENYING MOTIONS**
16   INSURANCE COMPANY, a New York                **FOR JUDGMENT AS A**
     Corporation,                                 **MATTER OF LAW, NEW**
17                                                **TRIAL, AND SANCTIONS**
              Defendant.
18   _____/

19

20                          **INTRODUCTION**

21        In this insurance action, the Court granted a Rule 50 motion prior to verdict and told the

22   jury that the insurer's decision to cease defending the insured and to interplead the total

23   remaining balance of its policy limits — even though only a smaller portion of those funds were

24   subject to any competing claims — constituted a breach of its contractual duty to defend.  The

25   insurance company now moves for judgment as a matter of law or, in the alternative, for a new

26   trial.  Plaintiff moves for sanctions.  For the reasons stated below, both motions are **DENIED**.

27                              **STATEMENT**

28        The essence of this case is that the insurance company ceased to defend its insured, a

     small-business owner, at the moment of her greatest peril, leading to a catastrophic judgment

against her and her business.  The main question was whether the carrier had a legal basis to cease providing her a defense.  The Court ruled (and instructed the jury) that it did not and thus violated its duty to defend.

Commercial Escrow Services, Inc., and its principal, Antoinette Hardstone, were engaged in the escrow business.  Hardstone and CES purchased an errors and omissions insurance policy from Navigators Specialty Insurance Company to insure and to defend against liability arising out of that business, a "wasting-limits" policy, under which the policy limit of one million dollars became reduced by defense costs as well as the payment of judgments or settlements.

Between 2010 and 2012, a number of customers sued Hardstone and CES for mishandled escrows.  Hardstone and CES tendered those suits to Navigators, which at first provided a defense via the law firm of Long & Levit.  While that litigation was pending, other customers filed administrative complaints against Hardstone and CES with the California Department of Corporations, which conducted an investigation and ultimately found a shortage of $195,750 in CES's accounts (TX 64).  In February 2012, the Department moved to appoint a receiver to liquidate and wind up the business of CES.  The order on that motion granted the receiver authority to receive "any insurance proceeds which may provide coverage for the shortage in any escrow accounts of CES" (TX 420).

The policy described three mechanisms by which Navigators could terminate its contractual duties to defend and indemnify its insured.  These mechanisms were described in Section I.D. of the policy (TX 2):

> **D.    EXHAUSTION OF LIMITS**
>
> The Company is not obligated to pay any damages or claim expenses or to defend or continue to defend any claim after the applicable limit of liability has been exhausted by the payment of damages or claim expenses or any combination thereof; or after the Company has deposited the remaining available limit of liability into a court of competent jurisdiction or tendered the remaining available limit of liability to the Named Insured or, if applicable, to the excess insurer(s) of the Named Insured.

By July 2012, Navigators recognized that various claims might eventually exhaust the remaining policy limits, so Navigators prepared to tender $545,580, which represented the balance of the policy limits at the time, directly to Hardstone and CES (TX 391).  An

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   enforcement attorney at the Department of Corporations, however, received Navigators' letter

2   informing Hardstone and CES of its intent and warned Navigators that tendering the full policy

3   limits directly to Hardstone might violate the order appointing a receiver for CES, inasmuch as

4   the $195,750 shortage had not yet been satisfied (TX 34).  Accordingly, Navigators stopped its

5   disbursement of funds directly to the insureds.

6        Instead, Navigators filed a complaint for interpleader purportedly pursuant to Section 386

7   of the California Code of Civil Procedure in the Contra Costa County Superior Court (TX 38).

8   Navigators deposited the *entire* $466,358 with the court, which represented the balance of the

9   policy limits at the time (diminished from the proposed tender by ongoing defense costs) — even

10  though only $195,750 of it was subject to competing claims.

11       Although the complaint identified six lawsuits which, combined with the $195,750

12  demanded by the Department of Corporations, presented a potential for liability that allegedly

13  "far exceed[ed]" the balance of the policy limits, Navigators only named CES and the

14  Department of Corporations as defendants and did not name any plaintiff in the six lawsuits.  An

15  amended complaint added Hardstone and the receiver as defendants.  Again, the claimant in our

16  case, Doublevision Entertainment, LLC, and the other claimants were never named as defendants

17  in any interpleader complaint.

18       Navigators immediately ceased paying Long & Levit for the continued defense of

19  Hardstone and CES.  Long & Levit promptly withdrew as counsel for Hardstone and CES in all

20  of the actions against them, leaving them without counsel at all.  This occurred just weeks before

21  the action brought by Doublevision was scheduled to go to trial (it was later delayed).  Hardstone

22  and CES then scrambled to retain coverage counsel in order to reinstate their rights under the

23  policy and to have representation in the interpleader action and, shortly before trial, retained

24  separate counsel to represent her in the Doublevision action.  Hardstone ultimately could not pay

25  for either of those representations and incurred substantial debt to both her coverage counsel and

26  her substitute trial counsel.

27       Desperate to regain Long & Levit and to put up a defense, Hardstone and CES pleaded

28  with Navigators for a release of the excess funds, but no settlement was reached.

**United States District Court**
For the Northern District of California

Many months later, the interpleader court requested the parties with pending litigation against Hardstone and CES, as well as Long & Levit, which had not been paid for some of its defense work, to move to intervene in the interpleader action and to assert claims to the interpled funds. Eventually in May, a settlement occurred to distribute the interpled funds among the claimants against Hardstone and CES. With the exception of Long & Levit and Doublevision, all claimants agreed to accept 19.6% of their alleged damages in exchange for a release of their claims against Hardstone and CES. Long & Levit did not release its claims, and Doublevision's distribution was conditioned on prevailing in its suit against Hardstone and CES. On June 12, 2013 the judge in the interpleader court issued an order approving that stipulated agreement, granting the claimants' motions to intervene, and discharging Navigators from the interpleader action (TX 75, 425).

At that point, however, Hardstone and CES were already in the Doublevision trial, saddled with inexperienced counsel who had had only three weeks to prepare. The defense had missed several pretrial deadlines that resulted in the preclusion of some key evidence (Tr. 1178–84). Doublevision won a judgment for $1.5 million plus interest against Hardstone and CES. This was six times the out-of-pocket loss and represented a catastrophic blow to Hardstone and CES. In partial satisfaction of that judgment, Doublevision took its distribution under the interpleader settlement. Doublevision placed liens on Hardstone's property to account for the shortfall between that amount and the full judgment. Lastly, Doublevision took an assignment of Hardstone and CES's rights against Navigators (TX 328).

Standing in the shoes of Hardstone and CES, Doublevision commenced this litigation against Navigators, claiming that Navigators breached its contractual duty to defend its insureds by completely ceasing payment of defense costs. After a jury trial, but before the verdict issued, the Court granted a Rule 50 motion, holding that Navigators' decision to interplead all of the remaining policy limit of $466,358, rather than simply the $195,750 subject to conflicting claims and, based thereon, to cease providing a defense constituted a breach of Navigators' contractual duty to defend. The jury was instructed accordingly.

United States District Court

For the Northern District of California

The jury also found that Navigators had breached its duty to accept a reasonable settlement offer and its duty to pursue a settlement. The parties stipulated that the total amount of Doublevision's recovery from those claims was $2,280,000, however, the jury was instructed to consider an offset to that recovery if it found Navigators' conduct conferred any benefit on Hardstone and CES. The jury found Navigators had proven no offset.

Navigators now moves for judgment as a matter of law in its favor, based on the theory that Hardstone had no claim against Navigators to assign to Doublevision. Alternatively, Navigators moves for a new trial, claiming that the jury's verdict that it was not entitled to an offset was contrary to the weight of the evidence. Doublevision also moves for sanctions against Navigators claiming it improperly denied salient facts ultimately proven in response to requests for admission. This order follows full briefing and oral argument.

## ANALYSIS

### 1.    THE BREACH OF THE DUTY TO DEFEND.

The Court's instruction to the jury succinctly explained why Navigators had violated its duty to defend (Dkt No. 250, Instruction Nos. 33–36):

> The complaint for interpleader filed by Navigators in the Superior Court for Contra Costa County is Trial Exhibit 38. (An amended complaint is Trial Exhibit 424.) The only sum alleged by Navigators to be subject to conflicting claims was $195,750, the amount demanded from Navigators by the Receiver appointed by the California Department of Corporations and contested by Ms. Hardstone and CES. These three were the only defendants named in the complaint for interpleader, and the $195,750 was all that was in contest among those defendants. Doublevision and other plaintiffs against Ms. Hardstone and CES were not named as defendants in the interpleader action and none of them had made a claim against Navigators anyway.
>
> In these circumstances, Navigators should have limited its deposit in court to the $195,750 and kept the $270,608 to continue to pay for the defense of Ms. Hardstone and CES, its duty under the errors and omissions policy. By failing to do so, Navigators breached its duty to defend Ms. Hardstone and CES. Thus, I am now obliged to instruct you that, under the law, plaintiff is entitled to recovery on its third claim, although not necessarily in the amount (or any amount) requested by plaintiff. Whether this breach was done in good faith or bad faith is irrelevant. It is not a question of good faith or bad faith. It was a breach of contract.
>
> Eventually, after the interpleader action was filed and the full deposit made, Ms. Hardstone and CES reached an agreement with

Navigators to allow $270,608 to be released to Ms. Hardstone and CES, but this agreement never got final approval or became effective. Although this would have mitigated the fix in which the insureds found themselves, the insureds should not have been placed in this position in the first place. This subsequent circumstance did not cure or excuse the breach.

Several months after Navigators made the deposit and ceased paying for a defense, several of the plaintiffs suing Ms. Hardstone and CES, like Doublevision, made motions to intervene in the interpleader action. This led to a settlement in June 2013 memorialized in Trial Exhibit 75. I instruct you that this circumstance did not retroactively validate the error by Navigators in depositing more than the $195,750. Nevertheless, this circumstance may possibly mitigate any damages from the error, and I will now instruct you on this point.

In your deliberations, you must consider a possible offset. Navigators contends that depositing the full $466,358 into the interpleader court benefitted Ms. Hardstone and CES by conserving resources for settlement of multiple claims. You may take into account the extent to which, had Navigators continued to defend Ms. Hardstone and CES, it would have continued to deplete the remaining funds available to settle, pay or defend all claims. This might, in turn, have prejudiced the ability of the defense to resolve the array of suits and claims. That, in turn, might have prejudiced Ms. Hardstone and CES by exposing them to suits and claims that otherwise, in the actual event, got resolved. The burden is on Navigators to prove the extent to which damages should be offset.

The jury found that Navigators had proven no offset. Judgment was entered against Navigators in a stipulated amount of $2,280,000 (on two alternative grounds as well as breach of the duty to defend). Navigators now argues, on two of the three grounds that were raised in its Rule 50(a) motion, that it is entitled to judgment as a matter of law, or, in the alternative, a new trial, even under the Court's interpretation of the exhaustion-of-limits clause.

Although Navigators does not challenge now the holding that it breached its contractual duty to defend by interpleading the excess $270,608 with the instant motion, this order re-affirms the instruction to the jury quoted at length above. Under Navigators' view, even if only one dollar became subject to conflicting claims, Navigators could have cut off all defense and interpled the entire remaining policy limits — despite a remaining amount of one million dollars, as shown by this colloquy during trial (Tr. 1426–27):

THE COURT: Okay. So let me ask you this question: If there was 1 dollar in dispute — let's say the Corporations Department just wanted 1 dollar and there was a million dollars left on the

United States District Court

For the Northern District of California

1    policy.  So even though 1 dollar was in dispute and you could have
     put 1 dollar into the interpleader, you put the entire million dollars
2    into the interpleader; and then said to the insured, "too bad for you.
     We have no longer any duty to defend you."  Your position is that
3    would be okay?

4    **MS. ASHTON:**  My position is the policy would allow that, just
     as the policy would allow the insurance company the first time the
5    claimant to write a check and give her the entire limits.

6    Admittedly, no decision is exactly on point, so we must be guided by fundamental principles.

7    One of those principles is the supreme importance of the duty to defend under an errors and

8    omissions policy, which is after all the main reason such policies are acquired, the other being

9    the duty to indemnify.  *See Howard v. American National Fire Insurance Co.*, 187 Cal. App. 4th

10   498, 519 (2010).

11       Given the supremacy of the duty to defend, the insurance policy in question should be

12   read as erasing the duty to defend only to the actual extent that conflicting claims are pending

13   (and identified in the interpleader complaint).  Here, the conflicting claims encumbered only

14   $195,750, and Navigators could have legitimately interpled as to that amount, but the complaint

15   in interpleader set forth no basis to deposit the entire remaining policy limits.

16       This is not a question of good or bad faith but a question of contract interpretation —

17   Navigators simply had no right under the contract to cut off the supply of oxygen to the defense

18   so long as the $270,608 (or some part of it) remained.  That Navigators may have been anxious

19   over the prospect of too many claims and too little money is irrelevant.  Navigators was

20   contractually obliged in our circumstance to keep the oxygen flowing until the $270,608 ran out.

21   Navigators breached the contract.

22       All of the decisions cited by Navigators are distinguishable.

23       In *Lehto v. Allstate Insurance Co.*, 31 Cal. App. 4th 60, 69–71 (1995), an automobile

24   insurer filed an interpleader when it faced numerous claims against the policy proceeds.  The

25   claims were direct actions against the proceeds filed by the victims of a car accident.  The

26   interpleader resulted in an agreement to apportion the funds among the claimants, but the victims

27   refused to release their claims directly against the insured.  The victims ultimately settled their

28   claims against the insureds for more than $2.5 million in excess of the policy limits.  The insured

United States District Court

For the Northern District of California

brought a claim against his insurer, claiming that the decision to interplead the funds was a breach of the covenant of good faith.

Lehto held that the insurer had not breached the covenant of good faith by filing an interpleader, because it provided a "judicially supervised forum for the collective resolution of all competing claims . . . ." *Id.* at 71. That decision expressly distinguished a prior decision, *Kelly v. Farmers Insurance Exchange*, 194 Cal. App. 3d 1, 3–5 (1987), which had reversed summary judgment rejecting a bad faith claim premised on an interpleader. In *Kelly*, an insurer failed to accept a reasonable settlement offer and instead interpled the policy funds even though there were no bona fide competing claims to those funds. The insurer in *Lehto* faced multiple bona fide claims directly against the policy funds, so *Kelly* did not apply.

*Lehto* is readily distinguishable. As discussed at length above, Navigators' liability does not arise directly from filing the interpleader, nor is it based in bad faith. Rather, Navigators' liability arises from the fact that it cut off the flow of oxygen to its insureds' defense, even though it still had funds unencumbered by any claim. *In Lehto, the insured was continuously defended.* His claim was simply that he was hit with a judgment in excess of policy limits, and that the interpleader procedure failed to prevent that result. Furthermore, the insurer in *Lehto* faced multiple bona fide competing claims directly against the policy funds, and the decision expressly distinguished *Kelly* on that basis. By contrast, Navigators' duty to defend was not terminated because there were no competing claims as to the $270,608 that it interpled in excess of the Department of Corporations' claim, so it still had a duty to defend its insureds at the time it filed the interpleader. *Lehto* provides no support for Navigators.

In *Everest Indemnity Insurance Co. v. Avertine-Tramonti Homeowners*, No. 09-1672, 2012 WL 870289 (D. Nev. Mar. 14, 2012) (Judge Robert Jones), an insurer commenced an interpleader against several dozens of its insureds, who were various subcontractors qualifying for protection under a wasting-limits policy. That decision held that the insurer's duty to defend was terminated because once it deposited the funds the insurer could no longer reach the policy funds in order to pay any defense or indemnification. That decision did not specify whether the duty to defend terminated upon the commencement of the interpleader or upon the discharge of

the insurer from that action.  It is distinguishable in any case because, unlike in our case, the interpled funds were unquestionably subject to the competing claims of multiple insureds with direct claims to the proceeds of their own policies, whose total defense costs and liability were likely to exceed the policy limits.

Finally, Navigators has cited two decisions that considered policy language similar to the exhaustion-of-limits clause in the policy at issue here, but neither supports its position.

The first, *National Union Insurance Co. of Washington, D.C. v. Phoenix Assurance Co. of New York*, 301 A.2d 222 (D.C. App. 1973), involved competing claims for personal injuries sustained in an accident on the insured's property.  There, the primary insurer offered to settle claims against the insured for its policy limits, and the claimants rejected that offer.  The primary insurer then deposited that sum with the court presiding over the claimants' case against the insured to be paid to the claimants upon final judgment or settlement.  The excess insurer then assumed the defense.  After the entry of judgment against the insured in the underlying matter, the excess insurer sued the primary insurer for contribution to the defense costs.  That decision held that the primary insurer's duty to defend terminated upon the deposit of the policy funds, based on language in the policy which required the primary insurer to pay defense costs until it has "paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon."  *Id.* at 255.

That decision is easily distinguished.  There, the policy funds were subject to a single claim, and the claimant's denial of a settlement for that sum confirmed that the claim was likely to exceed policy limits.  *Moreover, the insured was defended at all times*.  Thus, *National Union* was not a case of an insurer throwing up its hands in the face of an overwhelming number of claims, leaving its insured gasping for air.  It was a careful transition between a primary insurer and an excess insurer for the handling of a single claim, and the deposit of the policy funds, which were confirmed to be the subject of claims by a party in the court into which the funds were deposited, facilitated that transition.

Navigators also cites *Commercial Union Insurance Co. v. Adams*, 231 F. Supp. 860 (S.D. Ind. 1964), which interpreted the same policy language at issue in *National Union* in the context

of an interpleader involving multiple claimants against a set of insureds.  There, the primary and excess insurers deposited bonds in the amount of the full policy limits with the interpleader court and sought confirmation that their duties to defend had terminated.

*Commercial Union* held that the insurers' duties to defend had terminated, but only after expressly determining that the fair settlement value of the numerous claims held by the defendants in the interpleader action exceeded the policy limits.  *Id.* at 865–66.  Further, the duties to defend were not deemed to terminate until the insurers deposited cash with the court, which would supercede the bonds and confirm that the insurers disclaimed any interest in the interpled funds.  *Id.* at 867.  Thus, *Commercial Union* only found that the insurers' duties to defend terminated after ruling that the interpleader was proper and discharging the insurers.  Any defense costs incurred prior to that point remained the responsibility of the insurers.  So too here.

Navigators has failed to offer any authority demonstrating that its duty to defend could be terminated by interpleading the full remaining policy limits of $466,358, although only $195,750 was subject to competing claims, particularly given that it did not name any of the other claimants against Hardstone or CES as defendants in the interpleader.  Navigators' duty to defend did not terminate when it interpled $270,608 that was not subject to any competing claims, so it breached that duty when it completely ceased paying for its insureds' defense.

### 2.   NAVIGATORS' MOTION FOR JUDGMENT AS A MATTER OF LAW.

Navigators has filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b).  Navigators argues that it is entitled to judgment as a matter of law because Hardstone and CES had no actionable claims against it to assign to Doublevision.  Navigators' argument is based on two theories.  *First*, Navigators contends that its duty to defend was terminated when the interpleader was "properly constituted," which it argues was prior to the commencement of the trial in the Doublevision action.  *Second*, Navigators argues that Hardstone and CES waived any claims against Navigators by failing to assert those claims in the interpleader action or demurring to the interpleader action.  Both arguments fail.

United States District Court

For the Northern District of California

### A.      The Interpleader.

Hardstone and CES assigned all rights and claims under the policy to Doublevision in April 2014 (TX 328).  Navigators contends that Doublevision failed to prove that Hardstone or CES had any actionable rights to assign in the first place.  Specifically, Navigators contends that the interpleader court properly had jurisdiction over the full sum of $466,358 as of May 2, 2013, when the claimants against Hardstone and CES all attended a "mandatory" settlement conference at which they tentatively agreed to the stipulation that ultimately resolved the interpleader action. It argues that the proper constitution of the interpleader action exhausted all duties under the policy, so there could be no breach of the duty to defend after that date.  The trial in Doublevision's case against Hardstone and CES did not begin until June 3.  Navigators contends it could not be liable for the judgment against CES and Hardstone as its duty to defend its insureds terminated before the trial ever began.  Not so.

Even if Navigators' duty to defend terminated when the interpleader court gained jurisdiction over the entire policy funds, that could not have occurred (if it ever did) until June 12, nine days *after* the Doublevision trial began.  At the settlement conference on May 2, the claimants' motions to intervene had not yet been granted, Navigators had not yet been discharged as the stakeholder, and the claimants still did not have any actionable claims against the interpled funds.  The interpleader court did not have jurisdiction over the excess funds at that time.

The order approving the settlement agreement on June 12 simultaneously granted the claimants' motions to intervene, approved a stipulation allowing the claimants to assert claims against the interpled funds, resolved those claims, and discharged Navigators.  It wasn't until that date (if ever) that the interpleader court gained jurisdiction over the full deposit. Navigators' argument that Hardstone and CES had no claims to assign to Doublevision falls flat.

### B.      Hardstone And CES Did Not Waive The Claims Herein.

Navigators also argues that Hardstone and CES forfeited any claims against Navigators by failing to demur to the interpleader action or raise the claims asserted herein as counterclaims in the interpleader action.  The California Supreme Court has held that "[t]he only question that

United States District Court
For the Northern District of California

can be litigated between the plaintiff and the defendants in such action is whether the plaintiff is entitled to compel the defendants to interplead with respect to their conflicting claims to the fund or debt alleged by plaintiff to be in his hands, or due from him." *Conner v. Bank of Bakersfield*, 174 Cal. 400, 403 (1917).  Nevertheless, in *Cheiker v. Prudential Insurance Company of America*, 820 F.2d 334, 336 (9th Cir. 1987), our court of appeals held that California's compulsory cross-complaint statute, Section 426.30 of the California Code of Civil Procedure, applies in interpleader actions.  Section 426.30 provides that a defendant in an action must bring any "related cause of action" against the plaintiff in that action, that it had at the time it filed an answer in the first action, otherwise the related cause of action is waived.  A related cause of action is "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." Cal. Civ. Proc. Code § 426.10.  *Cheiker* held that because Section 426.30 delineated two specific exceptions (where the court lacks jurisdiction over the new claim and where no answer is filed), any other possible exception must be excluded.

     In *Cheiker*, an insurer interpled the proceeds of an insurance policy as the decedent's daughter and another claimant each asserted claims to the policy funds.  The claimants eventually settled the interpleader action.  The decedent's daughter then filed a complaint against the insurer, claiming the insurer wrongfully interpled the funds instead of paying them out under the policy.  Our court of appeals affirmed a decision of the district court, which had found the daughter's claims barred, as they were "related" under California's compulsory cross-complaint statute.

     Our court of appeals reaffirmed that holding in an unpublished decision.  *Pietak v. State Farm Fire & Casualty Co.*, No. 98-15089, 1999 WL 599478, at *2 (9th Cir. Aug. 10, 1999). There, an insured claimed his insurer improperly denied his claims under a homeowner's insurance policy after his house was destroyed in a fire and arson was suspected.  In an earlier-filed proceeding, the insurer had interpled the policy proceeds and named both the insured and the insured's bank, which had foreclosed on the home and asserted claims under the policy, as

United States District Court

For the Northern District of California

1   defendants.  The insured's claim in federal court was dismissed, as it was held barred by

2   California's compulsory cross-complaint statute.

3           The California Court of Appeal, however, cast doubt on that holding in the related

4   interpleader action.  In *State Farm Fire & Casualty Company v. Pietak*, 90 Cal. App. 4th 600

5   (2001), the insured whose claim against his insurer was dismissed from federal court sought to

6   re-open the interpleader action in order to assert his cause of action there.  The trial court denied

7   the request, but the California Court of Appeal reversed, finding that the failure to assert the

8   cause of action in the interpleader action was due to an excusable error by the insured's counsel,

9   if it was an error at all.  The Court of Appeal examined the history of decisions pertaining to the

10  assertion of counterclaims and cross-claims in interpleader actions, and noted "there [was] a

11  respectable body of law that suggest[ed the insured] was actually precluded from injecting his

12  claims into that proceeding."  *Id.* at 612 (citing *Conner*, 174 Cal. at 403).  Thus, it was

13  reasonable for the insured's counsel to conclude that "claimants may raise only matters which go

14  to whether the suit is properly one for interpleader, *i.e.* whether the elements of an interpleader

15  action are present."

16          On the other hand, the California Court of Appeal discussed a more recent line of

17  decisions in which claimants were allowed to assert independent claims in an interpleader action.

18  Those decisions did not address the propriety of joining such claims.  *Pietak* recognized,

19  however, that the remedy of an interpleader is for the benefit of the stakeholder in that it permits

20  the stakeholder to "deposit the sum and walk away."  *Id.* at 614.  Accordingly, independent

21  claims could be permitted in the interpleader action if the stakeholder did not object.  Although

22  that decision found the history of the decisional law on point ambiguous at best, it expressly

23  declined to resolve whether *Cheiker* was a correct statement of the law, because the federal

24  court's decision was binding on the parties.  Thus, the unusual procedural posture warranted

25  reopening the interpleader action.

26          "A district court bound by circuit authority . . . has no choice but to follow it, even if

27  convinced that such authority was wrongly decided."  *Hart v. Massanari*, 266 F.3d 1155, 1175

28  (9th Cir. 2001).  When a district court sits in diversity, however, its role is more complex.  "The

13

1    task of a federal court in a diversity action is to approximate state law as closely as possible in

2    order to make sure that the vindication of the state right is without discrimination because of the

3    federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). "When interpreting

4    state law, federal courts are bound by decisions of the state's highest court. In the absence of

5    such a decision, a federal court must predict how the highest state court would decide the issue

6    using intermediate appellate court decisions as guidance." *Strother v. Southern California*

7    *Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996) (quotations omitted). A decision

8    from our court of appeals interpreting state law is "only binding in the absence of any subsequent

9    indication from the California courts that [its] interpretation was incorrect." *Owen ex rel. Owen*

10   *v. United States*, 713 F.2s 1461, 1464–65 (9th Cir. 1983). A clear decision from a state

11   intermediate court may be sufficient to overrule a prior decision of a federal court of appeals.

12   *See In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002).

13        Here, the only indication that the California Supreme Court would reach a different

14   conclusion from *Cheiker* is the Court of Appeal decision in *Pietak*. Despite the thorough and

15   careful reasoning in *Pietak*, it expressly avoided addressing *Cheiker* head on. The dicta of that

16   decision does not warrant deviating from *Cheiker*.

17        Even if Section 426.30 applies, however, it does not preclude Hardstone and CES's

18   claims. *First*, Section 426.30 expressly states that it does not apply if "[t]he person who failed to

19   plead the related cause of action did not file an answer to the complaint against him." Neither

20   Hardstone nor CES ever answered the complaint. Moreover, even if the stipulation that led to

21   the distribution of the interpleader funds, which was approved on June 12, 2013, could be

22   considered an answer for the purposes of Section 426.30, Doublevision had not yet won its

23   judgment against Hardstone and CES as of that date. Accordingly, the claims asserted herein

24   had not yet accrued (although Navigators' breaches had already left its insureds defending a trial

25   with unprepared counsel, and with key evidence precluded). Hardstone and CES (and

26   Doublevision as their assignee), cannot be precluded from bringing claims that had not yet

27   accrued.

28

14

1    Navigators also contends (as it did in its Rule 50(a) motion) that Hardstone and CES

2    forfeited the rights to any policy proceeds by failing to demur to the interpleader action, and

3    ultimately consenting to the stipulation that discharged Navigators.  That contention is irrelevant.

4    The claim that Doublevision asserts as the assignee of Hardstone and CES is not one for the

5    policy proceeds, it is for the damage caused by Navigators' decision to cut off the flow of

6    oxygen to its insureds' defense by commencing an interpleader that was improper on its face.

7    The fact that the jurisdictional defect in the interpleader may have been cured did not excuse

8    Navigators' initial breach, which left its insureds gasping for air for months, through the start of

9    the Doublevision trial.

10    Thus, Hardstone and CES assigned valid claims against Navigators to Doublevision, and

11    Navigators' motion for judgment as a matter of law fails.

12    **3.    NAVIGATORS' MOTION FOR A NEW TRIAL.**

13    Navigators argues it is entitled to a new trial on the same grounds as its motion for

14    judgment as a matter of law.  Navigators' arguments did not raise any genuine disputes of fact

15    for which a new trial would be necessary.  A new trial is not warranted on those grounds.

16    Navigators also argues that it is entitled to a new trial on the limited issue of the proper

17    measure of the offset to its damages.  In considering a motion for a new trial under Rule 59, a

18    district court has "the right, and indeed the duty to weigh the evidence as [the court] saw it, and

19    to set aside the verdict of the jury, even though supported by substantial evidence, where in [the

20    court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence."

21    *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (quoting *Moist Cold*

22    *Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957)).

23    The jury was charged with the following instruction (Dkt. No. 250, Instruction No. 36):

24    > In your deliberations, you must consider a possible offset.
      > Navigators contends that depositing the full $466,358 into the

25    > interpleader court benefitted Ms. Hardstone and CES by
      > conserving resources for settlement of multiple claims.  You may

26    > take into account the extent to which, had Navigators continued to
      > defend Ms. Hardstone and CES, it would have continued to deplete

27    > the remaining funds available to settle, pay or defend all claims.
      > This might, in turn, have prejudiced the ability of the defense to

28    > resolve the array of suits and claims.  That, in turn, might have
      > prejudiced Ms. Hardstone and CES by exposing them to suits and

**United States District Court**
For the Northern District of California

claims that otherwise, in the actual event, got resolved.  The burden is on Navigators to prove the extent to which damages should be offset.

That is, the jury was instructed to consider whether Navigators was able to achieve a financial benefit to Hardstone by interpleading more than the $195,750 claimed by the Department of Corporations, which led to the intervention of numerous claimants against Hardstone and CES, and the settlement of their claims for 19.6% of the damages alleged in the complaints against her.  The jury found that Navigators' actions provided no financial benefit to Hardstone, and Navigators was not entitled to any offset.  That conclusion was not contrary to the weight of the evidence.

Navigators argues that if it had retained the $270,608 not subject to competing claims at the time of the interpleader, Hardstone and CES would have faced substantially higher liability exposure.  The settlement of the interpleader resulted in the release of claims in three lawsuits against Hardstone and CES, and resolved the claim of the Department of Corporations.  The complaints in those three lawsuits alleged damages in the aggregate of $1,700,000, and the Department of Corporations asserted a claim of $195,750.  Those claims were all resolved for less than twenty cents on the dollar, with no out-of-pocket payment from Hardstone or CES.  Nevertheless, it left Hardstone and CES liable for payments to Long & Levit, for the defense costs in the Doublevision action, and for the judgment that Doublevision ultimately won (less its distribution under the interpleader settlement) (TX 485).

If Navigators had only interpled $195,750 for the purposes of resolving the claim of the Department of Corporations, it would have been left with $270,608 to resolve the $1,700,000 in claims that were released in the interpleader as well as the claims of Doublevision and Long & Levit that were not released.  Those funds also would have had to pay for the continued defense of those actions.  All told, Navigators contends that by filing the interpleader, it reduced Hardstone and CES's liability exposure from over four million dollars to just over two-and-a-half million dollars.  Thus, it argued, the judgment against it should have been offset by the difference.

United States District Court

For the Northern District of California

1    Three lawsuits were completely resolved by the interpleader settlement. The settling

2    claimants were Mindfox Productions, LLC, Capital Equities, Inc., and Element Capital, LLC.

3    Navigators failed to provide any evidence of the merits of the Capital Equities and Element

4    Capital complaints, and it provided only scant evidence of the merits of the Mindfox complaint.

5    As to Capital Equities and Element Capital, Navigators only offer the complaints and

6    testimony pertaining to the allegations therein as evidence of the merits of those suits (TX 419,

7    421). Capital Equities alleged a loss of $400,000 due solely to the mishandling of escrow funds

8    by Hardstone and CES (TX 419). Element Capital named over a dozen defendants and alleged

9    that CES "turned a blind eye" to an apparently fraudulent transaction. It alleged a loss of

10   $300,000 (TX 421 ¶¶ 25, 93). It was not contrary to the weight of those bare allegations for the

11   jury to determine those complaints were meritless and could have been resolved for even less

12   outside the interpleader.

13   As to Mindfox, Hardstone admitted that she had "a little fault" in handling the Mindfox

14   escrow (Tr. 560). Mindfox alleged that Hardstone and CES incorrectly diverted escrow funds,

15   but it also alleged that other defendants had orchestrated a scheme to defraud Mindfox of the

16   funds it deposited (TX 19 ¶¶ 34–36). The weight of the evidence shows that Hardstone had only

17   "a little" risk of liability in the Mindfox lawsuit; nothing in the evidence demonstrates that the

18   settlement of that claim for $19,600 in the interpleader was a discount on the actual risk of

19   exposure. Nor was there any evidence that an even more favorable settlement could not have

20   been achieved but for the interpleader.

21   Moreover, even if Navigators could not have resolved the Mindfox, Capital Equities, and

22   Element Capital claims more favorably than it did with the interpleader, it also failed to present

23   evidence that it could *not* have resolved the Doublevision action for substantially less than the

24   ultimate judgment if it had not filed the interpleader. Indeed, the jury determined that

25   Navigators *should have* settled that action when it had the chance.

26   Finally, Navigators argues that it was entitled to an offset for at least $157,383, which is

27   the difference between the full claim of the Department of Corporations and the amount for

28   which it settled in the interpleader action. Navigators contends that Doublevision conceded that

17

it was entitled to an offset of that amount.  Not so.  Doublevision did address that particular line-item in its closing argument, but it only conceded that was the *maximum* to which Navigators could be entitled (Tr. 1594–95):

> Now, if you look at Exhibit 75, it's going to be the settlement ultimately reached in that action, and you're going to see, you're going to see that the interpleader as to the claim that was at issue, as to the claim that was at issue did result in something positive.
>
> Instead of $195,750, that claim settled in the interpleader for $38,367.  And that's the maximum offset Navigators is entitled to. That's the money that was saved by them filing their action. That's all that they put at issue.  That is what was saved.

The interpleader led to a settlement of the Department of Corporations' claim for 19.6% — a discount of $38,357 — but Navigators presented no evidence whatsoever that it would not have been able to achieve the same result (or even a better result), without commencing a proper interpleader.  Moreover, as discussed above, there was no evidence to preclude the possibility that the *other* claims could have been settled for less than 19.6%, which would have cancelled out any benefit from settling the Department of Corporations' claim.  Thus, it was not against the weight of the evidence for the jury to conclude that Navigators was not entitled to an offset, even for the Department of Corporations claim.

Navigators' motion for a new trial is **DENIED**.

**4.    DOUBLEVISION'S MOTION FOR SANCTIONS**.

Doublevision argues that it is entitled to sanctions in the amount of $265,572.82, which is the aggregate of the expenses it claims it incurred in proving seven facts for which it requested admissions.  It cites Rule 37(c)(2) as the basis for this motion:

> (2) Failure to Admit.  If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof.  The court must so order unless:
>
> (A) the request was held objectionable under Rule 36(a);
>
> (B) the admission sought was of no substantial importance;
>
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

**United States District Court**
For the Northern District of California

(D) there was other good reason for the failure to admit.

The sum that Doublevision requests is the aggregate of the costs and fees incurred conducting several depositions, eliciting trial testimony, reviewing documents, and preparing its motion for summary judgment.

As a threshold matter, Navigators argues that Doublevision's motion is untimely, as it was filed after judgment was entered. Rule 37(c) does not specify the proper time for a motion for sanctions. Rather, Navigators relies on a decision from the Seventh Circuit, *Popeil Brothers, Inc. v. Schick Electronics, Inc.*, 516 F.2d 772, 778 (7th Cir. 1975), as support for the rule it proposes. Doublevision responds that a Sixth Circuit decision allowed such a Rule 37(c) motion post-judgment because the rule does not establish any time frame for a motion for sanctions, and the motion is inherently drawn to post-trial relief. *Kasuri v. St. Elizabeth Hospital Medical Center*, 897 F.2d 845, 955–56 (6th Cir. 1990). Our court of appeals has not addressed the timeliness of a motion under Rule 37(c)(2). Given the limited time (less than an hour) between when the verdict was rendered and when judgment issued, and the split of authority regarding whether the motion must be filed prior to the entry of judgment, this order will consider the merits of Doublevision's motion.

Doublevision contends that it is entitled to sanctions in the amount of fees and costs it incurred in order to prove the facts it sought admissions for in its requests for admission 1–5, 7, and 10 (Lapine Decl., Exh. A).

### A.    Request For Admission 1.

Doublevision requested the following admission: "Admit that **YOU** did not reserve any funds from the policy at issue, or otherwise, to provide **YOUR** insureds with a defense in the **UNDERLYING CASE** after you filed the **INTERPLEADER ACTION**."

Navigators responded first with an objection, (which it included in every response): "Defendant objects to the use of the terms "YOU" and "YOUR" in these requests. Although "YOU" and "YOUR" are used in this request, and are capitalized and bolded in the request, these terms are not defined." Navigators further objected to this request because "the term 'reserve' has a special meaning in the insurance industry aside and apart from its ordinary

United States District Court

For the Northern District of California

meaning.  Responding to this request would require Defendant to speculate as to Plaintiff's intended meaning."  Subject to those objections, Navigators responded, "Defendant lacks sufficient information to either admit or deny the request, and therefore denies the request."

Navigators provided a good reason for denying this request, as it was unable to speculate as to Doublevision's intended definition of "reserve," which was particularly ambiguous given that "YOU" and "YOUR" were not defined.  Doublevision never followed up with a second request that defined "reserve" in that context.  Furthermore, to the extent this request is drawn to an admission that Navigators interpled the entirety of the policy limits, that fact was never in dispute as it was critical to Navigators' defense.  Doublevision is not entitled to sanctions for failing to follow up with a more clearly-phrased request for admission on this issue, particularly given that it appears likely Navigators would have admitted to a clearer request.

### B.    Requests For Admission 2, 3, And 5.

In requests for admissions 2, 3, and 5, Doublevision asked Navigators to admit that it was informed by counsel for its insureds of certain excerpts from documents that had been provided in discovery.  In request 2, Doublevision asked Navigators:

> Admit that **YOU** were informed, on or about March 8, 2011, by counsel for **YOUR** insureds in the **UNDERLYING CASE** that "it will not be difficult to convince a court or jury that CES was told that the transaction was to be between DoubleVision and IFE and did not act reasonably in opening an escrow between IFE and King and then disbursing funds to IFE and King.

In request 3, Doublevision asked:

> Admit that **YOU** were informed, in a document labeled "CES Claims Summary", by counsel for **YOUR** insureds in the **UNDERLYING CASE** that "Liability exposure to CES/Hardstone likely for failure to comply with oral instructions provided by DoubleVision.

In request 5, Doublevision asked:

> Admit that **YOU** were informed, in December of 2011, by counsel for **YOUR** insureds in the **UNDERLYING CASE** that "we do not anticipate being able to find an expert who will testify that Toni's actions met the applicable standard of care."

For each of these requests, Navigators raised its objection to the definitions of "YOU" and "YOUR" as well as "insureds."  Navigators also stated that it "lack[ed] sufficient information to

**United States District Court**
For the Northern District of California

1   either admit or deny the request, and therefore denie[d] the request."  Nevertheless, Navigators

2   stated that the each of the excerpts did appear in the documents that Doublevision ultimately

3   relied on for the underlying facts at trial, and provided the relevant text.

4          Navigators had a reasonable basis for denying the requests for admission as framed by

5   Doublevision and for believing it would prevail in establishing those facts were appropriately

6   considered in context.  Navigators' defense relied in part on the argument that any indication it

7   had of Hardstone and CES's liability exposure was tempered by some other fact that may have

8   counseled against settlement.  It was reasonable for Navigators to deny that it was informed of

9   specific assessments of liability risk when those assessments were isolated from their context.

10         Doublevision also argues that it had to elicit testimony at trial in order to prove the

11  contents of the documents containing the excerpts, yet all three documents were pre-designated

12  as trial exhibits by both parties and admitted without objection, so it is disingenuous to contend

13  Doublevision called those witnesses as a result of Navigators' denial (TX 13, 26, 179).

14  Furthermore, Doublevision did not request an admission pertaining to the authenticity of those

15  documents.  Doublevision is not entitled to sanctions for Navigators' denial of these requests.

16                     **C.      Request For Admission 4.**

17         Doublevision asked Navigators to "[a]dmit that **YOU** engaged in settlement discussions

18  in the **INTERPLEADER ACTION** after **YOU** filed that action."  Navigators responded with its

19  general objections to the vagueness of "YOU" and "YOUR," among other boilerplate objections,

20  then asserted that the information was protected by the litigation privilege.

21         This admission was of no importance to Doublevision's case.  Doublevision argues that

22  this fact tended to demonstrate that Navigators attempted to condition settlement of the

23  interpleader action on Hardstone and CES waiving their bad faith claims against it, but it fails to

24  demonstrate how that was of substantial importance in its case.  Doublevision is not entitled to

25  sanctions based on this request.

26                     **D.      Request For Admission 7.**

27         Doublevision asked, "[a]dmit that **YOU** did not attend the **MEDIATION**."  After

28  reciting its standard objections, Navigators responded, "Denied."  Navigators did not prove this

fact.  Navigators' attorney, Eric Moon, undisputably attended the mediation.  Moreover "YOU"

is not defined, so it is at best ambiguous whether Navigators' attorney falls within that definition.

Doublevision is not entitled to sanctions for Navigators' denial of a fact that was not proven.

### E.      Request For Admission 10.

Doublevision asked, "[a]dmit that **YOU** did not communicate with **YOUR** insureds,

directly or through their counsel, regarding the **998 OFFER** between when it was made and

when it expired on April 7, 2011."  Navigators recited its "YOU" and "YOUR" objections and

responded, "Denied."  Doublevision argues that this fact relates to the propriety of Navigators'

conduct generally, which it contends was probative of its claim for the breach of the duty to

settle but that argument is unavailing.  The jury was charged that Doublevision's claim for

refusal to accept the Section 998 offer depended on the following four elements (Dkt. No. 250

Instruction No. 19):

> (1)      That Doublevision brought a lawsuit against CES and Ms.
> Hardstone for a claim covered by the Navigators' insurance
> policy;
>
> (2)      That Navigators failed to accept a reasonable settlement
> offer for an amount within the remaining policy limits;
>
> (3)      That a monetary judgment was entered against CES and
> Ms. Hardstone for a sum greater than the remaining policy
> limits; and
>
> (4)      That at the time of the offer, there was a substantial
> likelihood of a recovery in excess of the remaining policy
> limits.

Whether or not Navigators communicated with its insureds about the Section 998 offer, directly

or indirectly, is not probative of any of those elements.  Nor is the propriety of Navigators'

conduct.  Accordingly, that fact was not of substantial importance and Doublevision is not

entitled to sanctions for Navigators denial of request 10.

**CONCLUSION**

For the reasons stated above, Navigators' motion for judgment as a matter of law, or in the alternative, a new trial, is **DENIED**.  Doublevision's motion for sanctions is also **DENIED**.


**IT IS SO ORDERED**


Dated:   October 6, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California